### Lockwood L. Clark and Claire B. Clark v. Aqua Terra Corporation

[329 A.2d 666]

No. 82-73

Present: **Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.)**

Opinion Filed December 3, 1974

*James D. Foley, Esq.,* of *Yandell, Page & Archer,* Burlington, for Plaintiffs.

*Daniel J. Lynch, Esq.,* of *Kissane & Heald Associates,* St. Albans, for Defendant.

**Barney, C.J.** This is a dispute concerning a right-of-way overland to a lighthouse. The position of the defendant would

cut off all access except by water or over winter ice. The trial court, after hearing, made findings and, by order, established a right-of-way in the plaintiffs by prescription, based on more than fifteen years of adverse use. A permanent injunction barring interference by the defendant corporation was issued, and appealed here.

The property involved is a point of land known as Windmill Point, bounded by the east, south, and west by waters of Lake Champlain. The north side is entirely bounded by land of the defendant, and the only land access to the lighthouse premises is over those lands now owned by the defendant. The entire property including Windmill Point was once owned as a unit by one Danford Mott in 1857. On May 20, 1857, he sold the extreme southerly portion, including the point, to the United States, retaining the balance. A lighthouse was built, and the lighthouse keepers and others who lived on the point traveled the westerly shore across the Motts' land for access to Alburg. Apparently the records disclosed no grant to the United States of any right-of-way for access to the lighthouse property, even though such access was actually had over the grantors' land. This traveled way connected to the end of a town road that came to the west shore of the peninsula.

■ Under the law of Vermont the circumstances of this grant from the Motts to the United States would generate in the United States a right-of-way by necessity. *Willey* v. *Thwing,* 68 Vt. 128, 130–31, 34 A. 427 (1896); *Pennock* v. *Goodrich,* 104 Vt. 134, 139, 157 A. 922 (1932). This right would attach itself to the lighthouse premises and pass to succeeding owners.

The findings disclosed that one Peller purchased the land from the United States in 1946. He conveyed to one Bayer in 1949. No mention of a right-of-way was made in either deed. Bayer owned and used the property from 1949 until 1963. During that entire time Bayer used the access route from the end of the town road across the intervening land to the lighthouse. In 1963 Bayer sold the premises to the present plaintiffs. The deed from Bayer to the Clarks did not contain any reference to a right-of-way over the premises then owned by one Prairie.

Meanwhile, the remaining Mott property had remained in the family until sold in 1944 to Prairie. The deed from the Motts to Prairie made no reference to any reserved right-of-way to the United States, at that time still the owner of Windmill Point. Mr. Prairie installed a gate in the roadway leading from the point to the town road, but the gate was not locked and was for the purpose of keeping grazing cattle enclosed. The defendant corporation is a successor in title to Prairie.

The trial court found that, "At least since the time of Emil Bayer and subsequently during the time of the plaintiffs herein, the access to the home of Bayer and Clark has been over the land of Prairie; such use being open, notorious, and continuous." The court went on to state that it could not find that Mr. and Mrs. Clark abandoned their right to cross the Prairie property as access to their house on Windmill Point.

The defendant challenges these findings and also the court's failure to find as it requested with respect to the nature of the use of the right-of-way by the plaintiffs and their predecessors in title. It is the defendant's contention that the use of the right-of-way was based on permission and also on the understanding that the road was a town road. These positions relative to the facts in the case would tend, in the eyes of the defendant, to compromise the claim of the right-of-way by prescription. Perhaps the short answer is to point out that the trial court could not find these claims to be facts, and the weight of the evidence was for that court.

But assuming the facts to be as the defendant urges them, the result in this case would not be affected. The doctrine of adverse possession creates a prescriptive right based on long, continued usage against the holder of legal title. It is sometimes described as based on a presumed grant that becomes incontestable after the passage of the statutory time. *See Russell* v. *Pare*, 132 Vt. 397, 321 A.2d 77 (1974).

In this case, however, the law brings the presumed grant into being at the very outset. *Wheeler* v. *Taylor*, 114 Vt. 33, 37, 39 A.2d 190 (1944). Unless it can be found to have been abandoned, the right will continue to accrue to the holding. In this case the evidence abounds in continued and con-

stant use, entirely negating in the abandonment. Once the grant was established, the subsequent granting of a license or understanding that the use was by permission will not divest it, even in cases where the right-of-way is established by adverse user for the required period. *Dee* v. *King,* 73 Vt. 375, 379, 50 A. 1109 (1901). Nor will the grant be divested on account of an accompanying public use, since the use of the plaintiffs and their predecessors is presumed to be under the original grant. Again, any presumption of permissive use may be overcome by the facts establishing the original right-of-way. *Begin* v. *Barone,* 124 Vt. 421, 423, 207 A.2d 252 (1965).

The order of the lower court confirming the right-of-way in the plaintiffs is supported by the law as applied to the facts established in this case. No damages were awarded, based on a finding in which the lower court stated it was unable to find the plaintiffs suffered any damages. The plaintiffs raise this issue in their cross appeal.

■ Particularly in matters involving rights relating to real property, invasion of those rights, when established, requires some recognition, even if only by way of nominal damages. Our law in this connection is admirably summarized by Mr. Justice Miles, in dissent, in *Nichols* v. *Central Vermont Railway Co.,* 94 Vt. 14, 22–25, 109 A. 905 (1919). Likewise, suits involving such rights cannot fail as *de minimus,* since the invasion of those rights, if repeated, may operate in derogation of them. *Bragg* v. *Larraway,* 65 Vt. 673, 683, 27 A. 492 (1893).

■ On this account, the lower court was bound to pay particular attention to the evidence relating to damages and evaluate it in its findings. *See Gramatan National Bank* v. *Beecher,* 121 Vt. 39, 48, 146 A.2d 246 (1958). Although the lower court's findings should stand if supported by any credible evidence, and the evaluation of the probative force of the evidence is for that court, the contention that it received any such evaluation is undermined by the failure to recognize any damage award of any kind or acknowledge in the findings any evidence relating to damages.

On the other hand, the evidence as to damages came in without contravention. There were two principal contentions. One related to the impediment of the right-of-way obstruc-

tion to some roof repairs, with consequential injury to the property; and the other, to the effect of the obstruction on prospective tenants who had, in fact, agreed to rent the property. The evidence was that an obstruction or barricade composed of timbers, placed by the defendant, caused the prospective tenants to refuse to rent, with consequent loss of income to the plaintiffs. The measure of such damage and the presence of any mitigating factors are for the trier of fact to resolve, by findings. The record does not demonstrate that he has done so, so the matter must be returned for disposition of this issue. *State Highway Board* v. *Jackson,* 128 Vt. 17, 24, 258 A.2d 575 (1969).

*The judgment order confirming the right-of-way in the plaintiffs is affirmed. The judgment as to damages is reversed, and the cause is remanded for further proceedings with respect to that issue in accordance with the views expressed in the opinion.*