2009 VT 17

## David W. Carlson and Linda Carlson, et al. v. Lockwood L. Clark and Claire B. Clark

[970 A.2d 1269]

No. 07-313

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed February 13, 2009

*John C. Gravel* and *Thomas C. Nuovo* of *Bauer, Gravel, Farnham, Nuovo, Parker & Lang*, Burlington, for Plaintiffs-Appellants.

*John C. Collins* and *Michael J. Harris* of *Collins, McMahon & Harris, PLLC*, Burlington, for Defendants-Appellees.

¶ 1. **Johnson, J.** Plaintiffs challenge the trial court's denial of their request to unilaterally relocate a shoreline right-of-way held by defendants Lockwood and Claire Clark. According to plaintiffs, the Clarks hold an easement by necessity, rather than a prescriptive easement, and plaintiffs are entitled to move the Clarks' easement to a location plaintiffs deem more convenient. The Clarks respond that their right to use the shoreline road was conclusively determined in prior litigation with plaintiffs' predecessor-in-interest, and that plaintiffs are barred by the doctrine of res judicata from raising this issue for a second time. We agree with the Clarks, and affirm.

¶ 2. Plaintiffs own real property on a peninsula called Windmill Point in Alburg, Vermont, derived from a common grantor, the Aqua Terra Corporation. The Clarks own adjacent property as well as an historic lighthouse on the tip of the peninsula. The Clarks have a right-of-way to their property that runs along the shoreline of Lake Champlain, behind plaintiffs' homes. Plaintiffs purchased their lots with clear notice of the existing right-of-way. They nonetheless claimed that increased traffic on the road was presenting a safety hazard and interfering with their ability to

enjoy their backyards. Plaintiffs asked the Clarks to move their right-of-way to a new access road running along the center of the peninsula. The Clarks declined to do so.

¶ 3. In March 2004, plaintiffs sued the Clarks, alleging that the Clarks held an easement by necessity, and that the necessity no longer existed because plaintiffs had created a new access road. Plaintiffs asked the court to "extinguish" the existing right-of-way, and order the Clarks to use the private roadway they had constructed. Plaintiffs moved for summary judgment and the court denied their motion. The court found that both the servient and dominant estates must agree to the relocation of an existing easement. The court also noted that material facts remained in dispute regarding the level of traffic on the shoreline road.

¶ 4. In March 2006, the Clarks moved for partial summary judgment, arguing that their vested prescriptive easement rights defeated plaintiffs' attempt to unilaterally move the right-of-way. The trial court agreed, finding that the earlier summary judgment ruling had resolved the issue of whether the right-of-way could be unilaterally relocated. The court declared the Clarks' easement to be prescriptive, and reiterated that it could not be relocated without the Clarks' consent.

¶ 5. Before the issue of the traffic level on the road could be tried, the parties reached an agreement on the road's use. They stipulated that use of the shoreline road would be limited to the Clarks and their family members, and that other visitors would use the center road. As part of their stipulation, the parties also reserved the right to challenge the trial court's underlying orders. In July 2007, the trial court issued a final order, recognizing the Clarks' right to use their existing right-of-way. Plaintiffs appealed.

¶ 6. On appeal, plaintiffs assert that, notwithstanding this Court's ruling in prior litigation between the Clarks and plaintiffs' predecessor-in-interest, the Clarks hold an easement by necessity. They suggest that any prior statement that the Clarks held a prescriptive easement was "unnecessary and served only to confuse the true nature of the easement." Plaintiffs argue that because the Clarks' easement is one of necessity, they have the right to relocate it unilaterally.[1]

---

[1] Plaintiffs spend a substantial portion of their brief on defining the scope of the Clarks' easement, but this issue was conclusively settled by the stipulation and we will not address it.

¶ 7. As plaintiffs conceded below, the nature of the Clarks' right to use this road has already been litigated and determined to be a prescriptive easement.[2] See *Clark v. Aqua Terra Corp.*, 133 Vt. 54, 329 A.2d 666 (1974). In *Aqua Terra*, we recounted the following history of the shoreline road. In 1857, one Mott, who owned the entire Windmill Point peninsula, conveyed the lighthouse property to the United States. The deed did not include an express right of access, but following the conveyance, the lighthouse keepers and family members used the shoreline road to access the property. In 1946, the United States conveyed the lighthouse property to a private owner, again with no mention of access to the property. Evidence showed, however, that from 1949 forward, there was continuous use of the shoreline road by the owners of the lighthouse property, including by the Clarks, who acquired the property in 1963.

¶ 8. Mott eventually transferred his property to Aqua Terra Corporation, and in 1972, Aqua Terra physically blocked the shoreline right-of-way. The Clarks filed a complaint for injunctive relief, seeking the removal of the physical barrier and an order permanently enjoining Aqua Terra from interfering with their use of the right-of-way. The Clarks asserted that the right-of-way had been used to access their property for over sixty years. Aqua Terra responded that any prior use of this road was permissive. Following a trial, the court issued a written order finding that there had been open, notorious, continuous, and adverse use of the shoreline road since 1949. The court concluded that the Clarks had obtained a right-of-way by prescription, "defined as that parcel of land on the westerly side of Windmill Point . . . from the terminus of the town road at the old ferry landing directly to the northerly gate of [the Clarks]." The court permanently enjoined Aqua Terra from interfering with the described right-of-way.

¶ 9. While neither party appears to have directly raised the issue of an easement by necessity, the Clarks did allege in their

---

[2] In a December 2005 filing with the trial court, plaintiffs agreed with the Clarks that "the previous Vermont Supreme Court decision upholding [the Clarks'] prescriptive easement is the law of the case." Indeed, they specifically stated that our decision in *Aqua Terra* "held that [the Clarks] had a prescriptive easement to get from the public roadway to their property," and they indicated that they were not trying "to upset this decision." Plaintiffs argued that "[t]he right-of-way, if relocated as requested by [p]laintiffs, will remain a prescriptive easement." We do not see why we should ignore these statements, as the dissent suggests, simply because they were included within a responsive pleading.

complaint that no public road served their property, although they noted that the property was accessible by water. In a related vein, Aqua Terra asked the court to find, following trial, that Lake Champlain was a navigable waterway, and that at the time of the initial conveyance to the United States, the property was accessible by a water route over Lake Champlain. Aqua Terra also maintained that there had been no evidence presented at trial as to whether any public roads served the lighthouse property at the time of the initial conveyance. As reflected above, the trial court found the easement to have been acquired by prescription, not implied by necessity. It noted in its findings, however, that access to the lighthouse could be had by water, as it had been in the past, although such access would be limited during much of the year due to weather conditions.

¶ 10. Aqua Terra appealed from the trial court's decision, arguing that the prior use of the right-of-way had been permissive, not adverse, and thus, the Clarks could not have obtained a prescriptive right of way. We rejected this argument and affirmed the trial court's order. In reciting the facts, we noted, sua sponte, that Mott's conveyance to the United States in 1857 "would generate in the United States a right-of-way by necessity," which would attach to the land and pass to succeeding owners. *Aqua Terra*, 133 Vt. at 56, 329 A.2d at 667. No further specific mention was made of a right-of-way by necessity, however. Instead, the Court discussed the trial court's finding that the Clarks' right was acquired by prescription and that it had not been abandoned. We concluded, in response to the arguments raised by Aqua Terra, that it was for the trial court to weigh the evidence. *Id.* at 57, 329 A.2d at 668.

¶ 11. Although the case was disposed of by deferring to the trial court's finding of fact that the use was adverse, we gave a further response to Aqua Terra's position that the use was permissive. "But assuming the facts to be as [Aqua Terra] urges them," we reasoned, the result would be the same. *Id.* Once the right attached, we explained, whether it arose at the time of the initial conveyance or through prescription, it could not be divested by future permissive use of the road. *Id.* at 57-58, 329 A.2d at 668. Although this discussion ensued in the context of the Clarks' prescriptive claim, the opinion does not further characterize the right.

 ¶ 12. It is fair to say, however, that the majority of our discussion in the case involved the issues that were actually litigated between the parties in the superior court, which were adverse use, abandonment, and permission. Moreover, we affirmed the trial court's judgment on appeal, and we did not note that we were affirming on an alternate legal theory, as we are entitled to do on appeal. We read *Aqua Terra* to affirm the trial court's decision that the Clarks hold a right-of-way by prescription, and we construe the Court's reference to a possible easement by necessity as dicta.[3]

 ¶ 13. Because the issue of the Clarks' easement right has been litigated, plaintiffs are now barred from trying to recharacterize the nature of that right. As we have often repeated, "[u]nder the doctrine of claim preclusion, a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical." *Faulkner v. Caledonia County Fair Ass'n*, 2004 VT 123, ¶ 8, 178 Vt. 51, 869 A.2d 103. The doctrine "bars parties from relitigating, not only those claims and issues that were previously litigated, but also those that could have been litigated in a prior action." *Merrilees v. Treasurer*, 159 Vt. 623, 624, 618 A.2d 1314, 1316 (1992) (mem.)[4]; see also *Moitie*, 452 U.S.

---

[3] Even if the reference to an easement by necessity was logically inconsistent with a prescriptive easement, it is of no moment. First, the reference to an easement by necessity is dicta. Moreover, it is well established that claim preclusion applies even if a prior final judgment is "wrong or rested on a legal principle subsequently overruled in another case." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); see also *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374-78 (1940) (claim preclusion applied even though statute upon which prior case was decided was subsequently declared unconstitutional); see also 18 J. Moore et al., Moore's Federal Practice § 131.12[3], at 131-21 (3d ed. 2008) ("The doctrine of claim preclusion is not concerned with whether a prior judgment was right or wrong or whether subsequent changes in the law, the discovery of additional facts, or considerations of fairness should merit a different result in the subsequent litigation."). The rationale is that although the law may change, the rights between the parties and their privies are concluded at final judgment. Otherwise, there would be no concept of settled rights, resulting in multiple lawsuits over the same issue. Indeed, as Moore observes, furthering the public policy of settled rights may be greatest in the resolution of real property disputes because of the "public's interest in the reliability and certainty of titles to real property." 18 J. Moore, *supra*, § 131.12[4][b], at 131-24.

[4] In discussing the doctrine of res judicata, our case law refers interchangeably to issues that "could have been raised" and issues that "should have been raised."

at 398 ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). The doctrine of claim preclusion rests on the "fundamental precept that a final judgment on the merits puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever." *Faulkner*, 2004 VT 123, ¶ 8 (quotations omitted). In actions such as this one involving real property, "the interest in repose which is the basis for the claim preclusion doctrine combines with the interest of society in stability and reliability of title to real property to encourage strict application of the doctrine." 18 J. Moore, *supra*, § 131.23[4], at 131-65-131-66.

¶ 14. In *Aqua Terra*, we decided the only issue litigated by the parties — did the Clarks have a right to use the shoreline road and if so, had they abandoned it, or was it overcome by Aqua Terra's claim that the use was permissive? The Clarks claimed, and we decided, that they had acquired a right by prescription, a right that had not been abandoned. *Aqua Terra*, 133 Vt. at 57-58, 329 A.2d at 668. Our discussion of *Aqua Terra* in *Berge v. State*, 2006 VT 116, ¶¶ 13-16, 181 Vt. 1, 915 A.2d 189, cited by plaintiffs, did not and could not alter the holding of *Aqua Terra* with respect to the parties before the Court.

¶ 15. As the dissent recognizes, for purposes of res judicata, a "cause of action is the same if the same evidence will support the action in both instances." *Hill v. Grandey*, 132 Vt. 460, 463, 321 A.2d 28, 31 (1974). "The element of identity of causes of action, for res judicata purposes, applies to affirmative defenses," and thus, "the doctrine specifically bars defendants from using defenses available in one action as the basis for a claim in a later action." *Lamb*, 165 Vt. at 381, 683 A.2d at 735 (quotation omitted). This litigation plainly presents the same essential cause of action as that presented in *Aqua Terra*, and it rests on exactly the same evidence. Citing the same series of real estate transactions, plaintiffs now ask this Court to construe those transactions

---

See, e.g., *Merrilees*, 159 Vt. at 624, 618 A.2d at 1316 (using both terms). The *Lamb* case, cited by the dissent, also uses these terms synonymously. *Lamb v. Geovjian*, 165 Vt. 375, 380-81, 683 A.2d 731, 734-35 (1996) (stating that doctrine of res judicata bars those "claims or causes of action that were or should have been raised in previous litigation" but concluding that plaintiff's claim was barred by res judicata where the plaintiff sought to litigate a claim that "could have been raised" as an affirmative defense in a prior proceeding (quotation omitted)).

differently than did the trial court, and this Court, in the first litigation. The doctrine of res judicata is explicitly designed to prevent this result. See *Agway, Inc. v. Gray*, 167 Vt. 313, 316, 706 A.2d 440, 442 (1997) (doctrine of res judicata based upon considerations of public policy that there be an end to litigation after each party has had a full and fair opportunity to be heard).

■ ■ ¶ 16. Accepting the issue as framed by the dissent, allowing plaintiffs to bring the current action would also " 'nullify the initial judgment or . . . impair rights established in the initial action.' " *Post*, ¶ 31 (quoting Restatement (Second) of Judgments § 22(2)(b) (1982)). A ruling that the Clarks now hold an easement by necessity, and not a prescriptive easement, would necessarily undermine our decision in *Aqua Terra*, which defined the Clarks' right differently, and it would impair the Clarks' property rights established through that litigation. See Restatement (Second) of Judgments § 22 cmt. f (explaining that issue preclusion is appropriate where claim is "such that its successful prosecution in a subsequent action would nullify the [first] judgment, for example, . . . by depriving the plaintiff in the first action of property rights vested in him under the first judgment"). The Clarks' right to use the shoreline road has been litigated, and plaintiffs are now barred from seeking, for a second time, to extinguish the Clarks' right-of-way. See 18 J. Moore, *supra*, § 131.10[2], at 131-17 ("The concept of *bar* prevents a plaintiff who loses in litigation from bringing a subsequent action based on the same transaction or series of transactions by simply asserting additional facts or by proceeding under a different legal theory.").

■ ¶ 17. We note, moreover, that both parties touched on necessity issues in the first litigation. The trial court was not persuaded by this evidence, finding that the Clarks had acquired a prescriptive easement — one acquired through longstanding, hostile, open, and notorious use of the road — and not an easement implied by necessity. Certainly, Aqua Terra's defense in the first litigation could have more explicitly included what its successors-in-interest now see as a more flexible legal theory on which to base the Clarks' entitlement — that the right-of-way was established by necessity and may be relocated.[5] Plaintiffs are

---

[5] To be clear, we do not reach the issue of whether an easement by necessity may be relocated unilaterally and express no opinion on that issue.

simply attempting to apply a new legal theory to the same facts in a second action. This does not present a difficult question in claim preclusion. The point is that there was a full and fair opportunity to litigate the nature of the right-of-way the first time, and additional legal theories are now foreclosed.[6] See, e.g., *Nevada v. United States*, 463 U.S. 110, 130 (1983) ("The final judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever." (quotation omitted)); *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991) (additional legal theory will not defeat preclusion when acts complained of, material facts alleged, and evidence required to prove allegations, are same as in prior action); *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985) ("New legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata.").

¶ 18. We did not hold otherwise in *Cassani v. Northfield Savings Bank*, 2005 VT 127, 179 Vt. 204, 893 A.2d 325, cited by plaintiffs. In that case, the plaintiffs sought reformation of a deed after a declaratory judgment action decided that the deeded easement was so inaccurate that it could not be interpreted to grant any effective right-of-way, and that it was fatally mistaken. *Id.* ¶ 14. Plaintiffs sought reformation of the deed, alleging that it was based on a mutual mistake of the parties. The first action was simply a construction of the deed, and a declaration of the rights granted to the plaintiffs under the deed; the second was an equitable action aimed at reforming the deed to carry out what the plaintiffs claimed was the true intention of the parties. *Id.* The two actions presented different issues, and the first declaratory judgment action decided only the preliminary issue of whether the deed, as written, established an easement. *Id.* ¶ 13.

¶ 19. Plaintiffs claim that *Cassani* permits a second action here because the Clarks' first action sought to prove the existence of the right-of-way while plaintiffs' present action seeks only to relocate it, and these issues are different. But plaintiffs seek to relocate the right-of-way unilaterally, and that argument is based, by their own contention, on establishing first that the nature of

---

[6] Although it is true that plaintiffs have alleged some new facts, occurring since *Aqua Terra* was decided, those new facts relate solely to the scope of use of the easement. Scope of use is a distinct issue that is not barred by the *Aqua Terra* decision, but that issue has been resolved by stipulation in favor of plaintiffs.

the right-of-way is one by necessity and not by prescription.[7] The issue in *Aqua Terra* — the nature of the Clarks' interest in the right-of-way — goes to the heart of plaintiffs' claim in this action. That action was not limited, as plaintiffs contend, to a mere declaration that the right-of-way existed. A determination of whether the right-of-way existed included the legal basis on which the Clarks had access to it. One issue could not be decided without the other. And, unlike *Cassani*, what was decided in *Aqua Terra* necessarily forecloses the first hurdle plaintiffs attempt to surmount.

¶ 20. Because this litigation involves the same parties, subject matter, and causes of action as the *Aqua Terra* case decided in 1974, all of the elements of claim preclusion have been satisfied, and plaintiffs' attempt to change the legal basis on which the Clarks hold their easement is barred. See *Lamb*, 165 Vt. at 379, 683 A.2d at 734. Plaintiffs' challenge to the trial court's decision is without merit.

*Affirmed.*

¶ 21. **Dooley, J.,** dissenting. This is the kind of case that makes the law look trivial, caught up in technicalities, and unable to bring a just result to a dispute that has no understandable purpose. Although plaintiffs have provided the Clarks with a brand new convenient road to reach their lighthouse, the Clarks insist on the right to drive to their lighthouse through their neighbors' back yards, reducing their privacy and access to Lake Champlain. As far as I can determine, they insist on this right for no reason other than that they have had it in the past and are at odds with their neighbors. If we were forced by clear law to reach this unfortunate result, I would go along with the majority decision. But, in fact, the majority has created a rigid, unnecessary and unrealistic formulation of the governing law. Thus, I respectfully dissent from a decision that relies on the wrong reason to reach the wrong result.

---

[7] Ordinarily, an easement may not be relocated without the consent of the owners of both the dominant and servient estates. *In re Shantee Point, Inc.*, 174 Vt. 248, 261, 811 A.2d 1243, 1254 (2002). Plaintiffs argue that a different rule applies if the easement is one by necessity. Again, it is unnecessary to reach this issue in view of our disposition. We note, however, that the Vermont case upon which plaintiffs rely does not involve the relocation of an existing easement, but rather an initial determination of where a certain easement by necessity was to be located. See *Jenne v. Piper*, 69 Vt. 497, 38 A. 147 (1897).

¶ 22. Over thirty years ago, plaintiffs' predecessor-in-interest unsuccessfully defended against the Clarks' suit claiming an easement across the land now held by plaintiffs. *Clark v. Aqua Terra Corp.*, 133 Vt. 54, 329 A.2d 666 (1974). Even though this Court's affirmance in that case did not decide whether the easement was created by necessity or prescription, the majority concludes in the present case that plaintiffs are now precluded from resolving that question. According to the majority, plaintiffs' predecessor should have somehow insisted that the nature of the easement be resolved in the previous action, even though no interest of the parties turned on the question at the time and the predecessor's position was that no easement existed. The result is that plaintiffs are now unfairly foreclosed from resolving the issue, a resolution that is likely to give plaintiffs the remedy they seek — relocation of the Clarks' easement to a location convenient to all parties.

¶ 23. The majority has relied upon an overbroad and rigid formulation of claim preclusion, well beyond the purpose of the doctrine and the requirements of our precedents. I agree with the majority that *Aqua Terra* conclusively established the Clarks' possession of an easement, but I disagree that the decision conclusively established whether the easement was created by necessity or prescription or both. Nor can I agree that plaintiffs somehow admitted that the Clarks have a right of way only by prescription.[8] Our prior decision relied on both theories. In this case, plaintiffs now seek to establish which theory is controlling. Because plaintiffs' current cause of action is different from that in *Aqua Terra*, I would reverse the superior court's summary judgment ruling in favor of the Clarks.

¶ 24. Further, on the merits, I would conclude that the undisputed facts demonstrate that the easement was created by necessity and that such easements may be relocated by the servient owner upon a demonstration that the relocation will not lessen the utility of the easement, increase the burden on the

---

[8] In response to a supplemental memorandum of law filed by the Clarks, plaintiffs explained in their own memorandum of law that they were not trying to eliminate the easement — rather, they sought to move it — and they were not trying to upset the *Aqua Terra* decision. This argument was, of course, in response to the Clarks' claims to the contrary. The memorandum was not an admission that *Aqua Terra* rested solely on a rationale that the easement was by prescription, as claimed by the majority.

easement owner, or frustrate the purpose for which the easement was created. Accordingly, I would remand for the court to consider whether plaintiffs' proposed relocation meets these requirements.

¶ 25. I begin with the issue of whether plaintiffs' present action to relocate the Clarks' easement is barred by claim preclusion. Res judicata or claim preclusion bars a party from instituting a subsequent action "where the parties, subject matter and the causes of action are identical, or substantially so." *Hill v. Grandey*, 132 Vt. 460, 463, 321 A.2d 28, 30 (1974). Parties are barred from relitigating claims that were actually raised, but also those "which might properly have been tried and determined" in the previous action. *B & E Corp. v. Bessery*, 130 Vt. 597, 601, 298 A.2d 544, 546 (1972). Where the defendant from the first proceeding seeks to bring a subsequent action, the preclusion rules are narrower than for a plaintiff bringing a subsequent action. A defendant's claim is barred if it was a compulsory counterclaim in the first case or if the second action would disturb settled rights. See V.R.C.P. 13(a) (defining compulsory claims); see Restatement (Second) of Judgments § 22 cmt. b (1982) ("[T]he defendant's failure to allege certain facts either as a defense or as a counterclaim does not normally preclude him from relying on those facts in an action subsequently brought by him against the plaintiff."). The public policy behind the application of claim preclusion is to ensure an end to litigation. *Agway, Inc. v. Gray*, 167 Vt. 313, 316, 706 A.2d 440, 442 (1997).

¶ 26. The majority asserts that we cannot now decide plaintiffs' case because *Aqua Terra* concluded that the Clarks' easement is one by prescription, and to revisit the issue now would be contrary to the interests of finality that res judicata protects. I agree with the majority that generally a prior judgment cannot be attacked based on an argument that the judgment was wrong or rested on subsequently overruled law. The situation in this case is different, however, because the question of what type of easement the Clarks hold was not resolved in the prior litigation. I disagree with the majority that *Aqua Terra*'s reference to an easement by necessity was merely dicta and that the case conclusively established that the Clarks hold an easement by prescription. Indeed, as the trial court in this case found, *Aqua Terra* called the easement both one of necessity and one by prescription. Because there was never a final determination on the type of the ease-

ment, adjudication of the issue now would not disrupt any settled rights. Nor would consideration of plaintiffs' case conflict with interests of finality because the holding of *Aqua Terra* — that the Clarks have an easement across plaintiffs' land — would remain undisturbed. Plaintiffs are not asserting a new legal theory to alter this Court's holding in *Aqua Terra*; rather, plaintiffs seek to resolve a question that *Aqua Terra* did not decide.

¶ 27. The labeling of this Court's discussion of an easement by necessity in *Aqua Terra* as "dicta" is an example of the overbroad application of claim preclusion. If a court grounds its decision on two theories, either being sufficient to support the result, the labeling of one theory as the "rationale" for the decision and the other as "dicta" is entirely a choice of the reader of the decision, in this case, the majority of this Court. The majority has made that choice to maximize, not minimize, preclusive effect and to deny plaintiffs an opportunity to show that the easement should be found to be one of necessity — a step to bringing this case to a reasonable result. I would take a more narrow approach that ensures that all parties have their day in court at least once; this approach is fully consistent with the purpose of claim preclusion. You can implement that policy only by avoiding labeling of rationales and recognizing each of them.

¶ 28. Ultimately, the majority relies upon the conclusion that plaintiffs' predecessor *could have* raised easement by necessity in the prior case and they are, therefore, barred by claim preclusion from raising it now. First, it is important to accurately state the proper standard for claim preclusion. The majority derives the "could have" rule from the memorandum decision of *Merrilees v. Treasurer*, 159 Vt. 623, 624, 618 A.2d 1314, 1316 (1992) (mem.), but acknowledges, although only in a footnote, that we have often stated the rule in terms of what the litigant "should have" done. See also *Lamb v. Geovjian*, 165 Vt. 375, 380, 683 A.2d 731, 734 (1996) (a party is foreclosed from litigating claims that "were or *should have been* raised in previous litigation" (quotation omitted and emphasis added)). The majority acts as if this terminology is synonymous, but it is clearly not. As the Second Circuit Court of Appeals explained, the " 'could have been' language of the third requirement is something of a misnomer." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001). The court went on to explain:

> The question is not whether the applicable procedural rules *permitted* assertion of the claim in the first pro-

ceeding; rather, the question is whether the claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding.

*Id.* This caution is important because this is a case where plaintiffs' predecessor could have raised an easement-by-necessity defense in the first case, but under no circumstances should it have raised the defense because doing so was totally contrary to its interests.

¶ 29. Second, it is critical to the application of claim preclusion in this case that plaintiffs' predecessor-in-interest, Aqua Terra Corporation, was the defendant in the prior action, not the plaintiff, and sought to defend against the Clarks' claim that they held an easement over its property. Most cases of claim preclusion involve a plaintiff who files two successive actions. In a case, such as this one, where the defendant from the first action files a subsequent action, the preclusion rule is more limited. Thus, the defendant's new claims are not precluded unless the defendant's success would nullify the original judgment or a statute required the defendant to bring his claim in the first action. *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.,* 497 F.3d 1096, 1101 (10th Cir. 2007).

¶ 30. There is no governing statute in this case. Nor are we dealing with a situation where Aqua Terra Corporation was bound to raise a compulsory counterclaim involving easement by necessity; that is, a claim that arose "out of the transaction or occurrence that [was] the subject matter of the opposing party's claim." V.R.C.P. 13(a); see *Stratton v. Steele,* 144 Vt. 31, 34, 472 A.2d 1237, 1239 (1984) ("[F]ailure to raise a compulsory counterclaim will result in a bar to future litigation of the claim under the doctrine of res judicata."). If Aqua Terra was required to raise easement by necessity, it could have done so only by asserting it as an affirmative defense on the theory that the Clarks could not have had a prescriptive easement if they had an easement by necessity. Asserting that the Clarks' held an easement by necessity was certainly not a compulsory counterclaim that Aqua Terra was required to bring.

¶ 31. This leaves only the issue of whether allowing plaintiffs to bring the current action "would nullify the initial judgment or would impair rights established in the initial action." Restatement

(Second) of Judgments § 22(2)(b). Resolving whether the Clarks hold an easement by necessity or prescription would not nullify the holding of *Aqua Terra*. See *Wickenhauser v. Lehtinen*, 2007 WI 82, ¶ 38, 734 N.W.2d 855 (explaining that the defendants in the prior action were not barred from asserting a claim in a subsequent action where the second action did not "nullify the first judgment or impair any rights established in that action"). Plaintiffs' present claim to establish the basis of the easement is an issue that the court never decided. See *Plott v. Justin Enters.*, 649 S.E.2d 92, 95-96 (S.C. Ct. App. 2007) (holding that landowner's prior action for trespass did not bar subsequent declaratory action claim for interference with easement where action for interference in prior case was not decided and was not a compulsory counterclaim).

¶ 32. While the above represents the technical response to the majority's position, common sense also supports why the prescription rule is designed as it is and limited in cases such as this. For Aqua Terra to have raised easement by necessity as an affirmative defense in the original litigation would have been an act of litigation suicide. Its goal in the prior case was to defeat any easement. Accordingly, in defense of the Clarks' claim to an easement by prescription, Aqua Terra asserted abandonment and permissive use. If easement by necessity represented an alternative theory by which the Clarks could obtain an easement, it was in Aqua Terra's interest to suppress that theory not to promote it. Yes, Aqua Terra "could" have responded to an easement-by-prescription claim by arguing that it was really an easement-by-necessity claim. That would have been a surrender, not a defense. Under no circumstances, however, "should" it have made that defense.

¶ 33. One other reason supports this common-sense result. The Clarks prevailed in the original litigation in the trial court exclusively on the theory of prescriptive easement. On appeal, however, they apparently believed that they needed a fallback position and thus argued in this Court that the judgment was also supported by the theory of easement by necessity. This Court picked up the alternative theory and included it in the decision. Thus, in the first litigation, the Clarks were indifferent to which theory would support their easement. In my view, they cannot now argue the inconsistent position — that plaintiffs' litigation would nullify the earlier judgment or undermine their rights.

¶ 34. For the reason stated above, the application of claims preclusion in this case is based on an overbroad statement of the doctrine that, when applied here, defies common sense. Therefore, I would reach the merits.

¶ 35. I turn then to plaintiffs' contention that the Clarks hold an easement by necessity, not prescription. An easement by necessity is created "when the division and transfer of commonly owned land results in a parcel left entirely without access to a public road." *Myers v. LaCasse*, 2003 VT 86A, ¶ 16, 176 Vt. 29, 838 A.2d 50. "In such a case, the grantee of the landlocked parcel is entitled to a way of necessity over the remaining lands of the common grantor or his successors in title." *Id.* (quotation omitted). Public policy supports the creation of easements by necessity because it means land will not be left inaccessible and unused. *Id.* "[A]n easement by necessity arises at the instant the original property is divided." *Berge v. State*, 2006 VT 116, ¶ 15, 181 Vt. 1, 915 A.2d 189. The easement remains in effect so long as the necessity exists. *Id.* ¶ 6. Once a public way is available for access to land, the way of necessity ceases. *Traders, Inc. v. Bartholomew*, 142 Vt. 486, 493, 459 A.2d 974, 979 (1983). In contrast, a prescriptive easement is created when one demonstrates "open, notorious, hostile, and continuous use for 15 years." *Guilbault v. Bowley*, 146 Vt. 39, 41, 498 A.2d 1033, 1034 (1985); see Restatement (First) of Property § 457 (1944) (easement created if use is adverse and continuous for period of prescription). If an easement by necessity already exists, no prescriptive easement can ever arise because the use is permissive and not hostile. *Guilbault*, 146 Vt. at 41, 498 A.2d at 1034 (explaining that permissive use will not "ripen into title no matter how long continued").

¶ 36. In this case, the undisputed facts are that when the Motts deeded the lighthouse property to the United States in 1857, the only means of land access to the property was over the remaining parcel of the Motts' land. Thus, when the conveyance divided the property, an easement by necessity was created in the United States. *Aqua Terra*, 133 Vt. at 56, 329 A.2d at 667. Once the easement by necessity was created, no amount of use could create an easement by prescription because the use was not hostile. See *Traders, Inc.*, 142 Vt. at 493, 459 A.2d at 979 (holding that easement by necessity created upon grant and that following use was not adverse and therefore could not ripen into a prescriptive

easement). Thus, I would conclude that the Clarks hold an easement by necessity across plaintiffs' land, and turn to the issue of relocation.

¶ 37. Plaintiffs contend that an easement by necessity may be relocated without the dominant owner's consent "where the resulting easement is as safe as the original location, the relocation results in a relatively minor change, and landowner's reasons for moving the easement are substantial." *Soderberg v. Weisel*, 687 A.2d 839, 842 (Pa. Super. Ct. 1997). The plaintiffs' proposal at first glance conflicts with our stated general rule pertaining to easements "that a way, once located, cannot be changed thereafter without the mutual consent of the owners of the dominant and servient estates." *Sargent v. Gagne*, 121 Vt. 1, 12, 147 A.2d 892, 900 (1958). We have reiterated this rule several times, but we have also recognized exceptions. See *Sweezey v. Neel*, 2006 VT 38, ¶ 10, 179 Vt. 507, 904 A.2d 1050 (allowing relocation of deeded easement where consent can be implied from party's acts and acquiescence); *In re Shantee Point, Inc.*, 174 Vt. 248, 261, 811 A.2d 1243, 1254 (2002) (restating general rule and recognizing exception in cases where the deed signifies an intent to allow relocation). As the rule relates to this case, an important distinction is that our past cases on relocation have involved express easements created by deed. See *Sweezey*, 2006 VT 38, ¶¶ 2, 10 (reiterating general rule in case of deeded easement); *Moore v. Center*, 124 Vt. 277, 280, 204 A.2d 164, 166 (1964) (easement established by deed could not be relocated unilaterally once fixed).

¶ 38. For example, in *Sweezey*, we considered whether to adopt a Restatement rule that allows relocation by the servient owner, subject to certain restrictions. The Restatement provides that servient owners may make reasonable changes in the location of an easement if the changes do not "(a) significantly lessen the utility of the easement, (b) increase the burdens on the owner of the easement in its use and enjoyment, or (c) frustrate the purpose for which the easement was created." Restatement (Third) of Property: Servitudes § 4.8 (2000). The Restatement explains that it is sound policy because it allows owners of servient estates to maximize use of their land. *Id.* § 4.8 cmt. f. Although the Restatement rule remains the minority view, several courts have applied a similar test and allowed relocation of easements, even when the dominant owner does not agree, if several factors are met. See, e.g., *M.P.M. Builders, LLC v. Dwyer*,

809 N.E.2d 1053, 1057-58 (Mass. 2004) (adopting Restatement and allowing servient owner to relocate express easement if the change does not lessen the utility of the easement, increase the burden on owner of the easement, or frustrate the purpose of the easement); *Kruvant v. 12-22 Woodland Ave. Corp.*, 350 A.2d 102, 119 (N.J. Super. Ct. Law Div. 1975) (holding that servient estate could relocate prescriptive easement if entry point did not change, and subject to dominant owner's approval, "which shall not be unreasonably withheld"); *Soderberg*, 687 A.2d at 842 (allowing servient estate to relocate a prescriptive easement "where the resulting easement is as safe as the original location, the relocation results in a relatively minor change, and landowner's reasons for moving the easement are substantial"). We declined to adopt the Restatement rule in *Sweezey*, explaining that this rule would cause uncertainty, increase litigation, and confer a windfall on the servient owner to the detriment of the dominant owner. 2006 VT 38, ¶¶ 24-25.

¶ 39. While requiring mutual agreement to relocate makes sense in cases involving express easements, relocation of easements by necessity presents a different question. An express easement is created through bargaining and the agreement of the parties, whereas an easement by necessity is created pursuant to public policy concerns about encouraging the use of land. See *Traders, Inc.*, 142 Vt. at 494-95, 459 A.2d at 979-80 (explaining that because an easement by necessity is based on social considerations, its scope should "be coextensive with the reasonable needs, both present and future, of the dominant estate," and that the location should not create an unreasonable burden on the servient estate). Furthermore, unlike an express easement, easements by necessity will cease once a public way is available for access to land.[9] *Id.* at 493, 459 A.2d at 979. Given these differences, the question is whether, and under what circumstances, the servient owner can relocate an easement by necessity without the consent of the dominant owner.

¶ 40. The South Carolina Court of Appeals addressed this exact issue in *Goodwin v. Johnson*, 591 S.E.2d 34 (S.C. Ct. App. 2003). In that case, the servient owners requested the court's permission to relocate an easement by necessity to a different part of their

---

[9] In this case, the newly constructed road does not automatically destroy the easement by necessity because it is a private, not public, road.

property because the existing easement was very close to their house and presented a danger to their children and pets. The court recognized the general rule that once an easement is fixed in a location it cannot be altered without the consent of both landowners. *Id.* at 36. The court explained, however, that this traditional rule had been applied to express easements and that easements created by necessity are different because the location is not fixed by the parties' agreement. The court held that it had equitable power to relocate an easement created by necessity. The court adopted the factors listed in the Restatement, explaining that relocation was available if it did not lessen the utility of the easement, increase the burden on the easement owner, or frustrate the purpose for which the easement was created. *Id.* at 38.

¶ 41. I think that the conclusion in *Goodwin* is logical, protects the interests of the dominant owner, and is in keeping with the public policy behind easements by necessity. Allowing the servient estate to construct an alternate way that does not reasonably interfere with the rights of the dominant estate protects the dominant owner's interest in reaching his property, but also allows the servient owner to maximize use of her land. This outcome does not harm the dominant owner and is essentially the same as if a public right-of-way had been laid down that destroyed the original easement by necessity.

¶ 42. In sum, because I disagree with the majority's unwarranted expansion of claim preclusion, I would remand the case to the superior court for it to consider whether plaintiffs' newly constructed road meets the above-listed criteria and may be relocated. This would allow plaintiffs the opportunity to bring a just end to this dispute. I dissent.