2015 VT 1

## Natural Resources Board Land Use Panel v. Donald Dorr, MGC, Inc., and Dorr Oil Company

[113 A.3d 400]

No. 13-215

Present: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Morse, J. (Ret.), Specially Assigned

Opinion Filed January 9, 2015

*William H. Sorrell*, Attorney General, and *Gavin J. Boyles* and *Scot L. Kline*, Assistant Attorneys General, Montpelier, for Petitioner-Appellee.

*Nathan H. Stearns* of *Hershenson, Carter, Scott & McGee, P.C.,* Norwich, for Respondents-Appellants.

¶ 1. **Morse, J. (Ret.), Specially Assigned.** This is an appeal from a judgment of the Superior Court, Environmental Division affirming an administrative finding of the Natural Resources Board (NRB) that respondents' gravel-extraction activities violated an Act 250 residential-subdivision permit. Respondents contend the ruling was in error because the permit had expired. We affirm.[1]

¶ 2. The material facts are largely undisputed, and may be summarized as follows. The subject property consists of two large parcels of land off of Route 7 in the Town of Manchester. Sand, rock, and gravel have been extracted from a portion of one or both parcels for decades. In September 1990, respondents' predecessor-in-interest received an Act 250 permit authorizing a nineteen-lot residential subdivision on the northern parcel (the "residential project tract"). Among other conditions, the Act 250 permit provided that it would expire one year from the date of issuance if the permittee had not demonstrated an intention to proceed with the project in accordance with 10 V.S.A. § 6091(b) (providing for the expiration of a permit if not "used" within three years), and otherwise would expire on October 1, 2020 unless extended by the District Environmental Commission. Other permit conditions prohibited any "changes . . . in the design or use" of the project without written approval of the district coordinator or commission, and specified that the permit and all conditions therein would "run with the land and . . . be binding upon and enforceable against . . . all assigns and successors in interest."

¶ 3. In September 1992, the district commission issued an amendment to the permit extending the time for construction of the project to October 1994. In June 1994, respondent Dorr Oil Company purchased the residential project tract. The warranty deed expressly referenced the Act 250 permit "and any and all amendments thereto." Shortly thereafter, respondent Donald Dorr

---

[1] Although the three respondents in this matter — Donald Dorr, Dorr Oil Company, and MGC, Inc. — raised some issues below relating to their individual and corporate responsibility, the trial court found that they had largely disregarded corporate formalities, and concluded that they were jointly and severally liable for the Act 250 violations. Respondents have not challenged this ruling on appeal. Thus, except for occasional references by name to a separate respondent for purposes of factual accuracy, we shall generally refer in this opinion to "respondents."

— on behalf of Dorr Oil — applied for and received a further permit amendment extending the time for construction to October 1995.

¶ 4. During this period, another company operated by Dorr, respondent MGC, Inc., purchased the southerly parcel (the "adjacent tract"), and continued to operate a gravel pit "most or all" of which the trial court found was located on the adjacent tract. Dorr took no steps thereafter to begin the actual subdivision of the project tract or the development of an internal roadway.

¶ 5. In March 2006, following a property-tax reappraisal of the tracts by the Town of Manchester, respondents filed a request with the district commission to declare the Act 250 permit as abandoned through nonuse. The commission, in response, issued a notice of intent to abandon the permit. The owners of a nearby residential property filed an objection, asserting that respondents had made a "material change" to the use authorized by the Act 250 permit by expanding gravel extractions activities onto the residential project tract. The commission then "tabled" the abandonment request "pending a jurisdictional opinion from the district coordinator on the material change question."

¶ 6. The district coordinator thereupon requested further information from the parties, visited the site with respondent Dorr and his attorney, and issued a draft jurisdictional opinion for comment. In January 2007, the coordinator issued a formal opinion, finding that the "Dorr gravel pit has expanded onto the parcel covered by [the Act 250 permit]," that this constituted "a material change to that permit," and therefore that "a permit amendment [was] required." Respondents neither appealed the jurisdictional opinion to the Environmental Division, as authorized by 10 V.S.A. § 6007(d)(4), applied for a permit amendment, nor abated the gravel extraction activities on the project tract.

¶ 7. Following respondents' inaction, in October 2008, the NRB chair issued an administrative order determining that respondents had violated conditions of the Act 250 permit by making a material change to the project without a land-use permit amendment. The order required respondents to pay a fine of $1,250 for the violation, file a complete Act 250 land-use permit amendment application, and cease all gravel pit operations on the project tract until the necessary permit approvals had been obtained. The order informed respondents of the right to request a hearing before the Environmental Division under 10 V.S.A. § 8012(a), and explained

that absent such a request the administrative order would become a final judicial order under 10 V.S.A. § 8008(d). Again, respondents neither requested a hearing, filed an amendment application, nor terminated the gravel-pit operations. Accordingly, in November 2008, the trial court signed and entered an order providing that the administrative order had "become a final Judicial Order." Respondents did not appeal that judgment.

¶ 8. Several years later, in January 2013, the NRB issued a further administrative order finding that respondents had violated the 2008 administrative and judicial orders by failing to pay the fine or file a permit amendment. Shortly thereafter, with the trial court's approval, the NRB issued a follow-up emergency administrative order finding respondents in violation of the 2008 orders by virtue of their failure to terminate all gravel pit operations on the residential project tract.[2] See 10 V.S.A. § 8009(a)(1), (b)(3) (authorizing issuance of an emergency administrative order when an activity or violation "presents an immediate threat of substantial harm to the environment" and the Environmental Division finds "a sufficient showing that grounds for issuance of the order exist"). The order directed respondents to cease all earth extraction and related activities until they received the required permit amendment.

¶ 9. Respondents requested a hearing on the emergency order, id. § 8009(d), which was held in early May 2013. At the conclusion of the hearing, the trial court granted the parties' joint request to submit follow-up memoranda, and issued a written ruling several weeks later. The court rejected respondents' principal defense to the order, predicated on their claim that they could not be held in violation of the Act 250 permit because it had expired, either by virtue of its express terms or by operation of law under 10 V.S.A. § 6091(b), which provides that nonuse of permit for three years "shall constitute an abandonment . . . and the permit shall be considered expired." The court thus affirmed the administrative order, and issued a final judgment directing respondents to cease all gravel extraction activities on the residential project tract until they received a permit amendment.[3] This appeal followed.

---

[2] The trial court here noted that the NRB had "offered no explanation" for why it waited five years to commence these follow-up enforcement actions.

[3] The trial court denied a subsequent NRB motion to clarify or amend the judgment to include administrative penalties.

¶ 10. ██ ██ Respondents renew their claim that the enforcement action and trial court judgment were based on an expired Act 250 permit, and therefore invalid. Although the trial court did not expressly consider the question of finality of judgments, we conclude that respondents' claim is barred by principles of res judicata. See *Samplid Enters., Inc. v. First Vt. Bank*, 165 Vt. 22, 28, 676 A.2d 774, 778 (1996) (where judgment was otherwise correct, we may affirm on rationale different from trial court). As we have often observed, under the doctrine of res judicata, or "claim preclusion, a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical." *Faulkner v. Caledonia Cnty. Fair Ass'n*, 2004 VT 123, ¶ 8, 178 Vt. 51, 869 A.2d 103. The doctrine "bars parties from relitigating, not only those claims and issues that were previously litigated, but also those that could have been litigated in a prior action." *Carlson v. Clark*, 2009 VT 17, ¶ 13, 185 Vt. 324, 970 A.2d 1269 (quotation omitted). We have held, moreover, that so long as the parties have had an adequate opportunity to litigate, the doctrine applies as readily to administrative as judicial decisions when the agency acts in a judicial capacity and the requisite identity of parties and subject matter are otherwise met. *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 39, 769 A.2d 668, 687 (2001); *Sheehan v. Dep't of Emp't & Training*, 169 Vt. 304, 308, 733 A.2d 88, 91 (1999).

¶ 11. ██ As we have explained, claim preclusion rests on the "fundamental precept that a final judgment on the merits puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever." *Faulkner*, 2004 VT 123, ¶ 8 (quotation omitted). The policies underlying the doctrine rest on the interests of consistency and repose. See *Berisha v. Hardy*, 144 Vt. 136, 138, 474 A.2d 90, 91 (1984) (characterizing res judicata's "final goals [as] the elimination of repetitive litigation . . . and repose to litigants" (quotations omitted)). Requiring the litigation of all claims that could or should have been raised between the parties precludes later rulings that might "nullify the initial judgment or . . . impair rights established in the initial action." *Carlson*, 2009 VT 17, ¶ 16 (quotation omitted); see also *Pomfret Farms Ltd. P'ship v. Pomfret Assocs.*, 174 Vt. 280, 284, 811 A.2d 655, 659 (2002) (noting that res judicata doctrine relieves parties of the "vexation of multiple

lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication" (quotation omitted)).

¶ 12. ■ It is readily apparent here that respondents' claim — challenging the validity of the enforcement proceeding on the ground that the Act 250 permit had expired either by its terms or by operation of law — was one that could and should have been raised in the earlier administrative and judicial proceedings between the parties. As noted, the NRB commenced an enforcement action in 2008 which resulted in a final judicial order and judgment that respondents had "violated [the Act 250 permit] by making a material change to the permitted project tract without written approval," and a directive to respondents to terminate all gravel pit operations on the property until a permit-amendment application had been filed and approved.

¶ 13. A necessary predicate to the 2008 judgment and order was a valid Act 250 permit that was not abandoned by operation of law. Plainly, therefore, respondents' claim that the Act 250 permit had expired could and should have been raised in that proceeding; the fact that the abandonment request had been "tabled" a year earlier did not render the issue moot or irrelevant in the 2008 enforcement action. Allowing respondents to belatedly raise the expiration claim in this current enforcement action would thus result in unnecessary litigation and potentially undermine the 2008 judgment, in clear contravention of the fundamental goals of consistency, efficiency, and repose served by the claim-preclusion doctrine. Accordingly, we conclude that the claim is barred.[4]

¶ 14. ■ ■ Respondents further assert that — res judicata notwithstanding — if the permit had expired then the NRB and the courts were without subject matter jurisdiction over this Act 250 enforcement action, and therefore the abandonment claim could be raised "at any time." *Myers v Brown*, 143 Vt. 159, 164, 465 A.2d 254, 257 (1983). "Subject matter jurisdiction" refers to the fundamental "power of a court to hear and determine a general class or category of cases." *Lamell Lumber Corp. v*

---

[4] Respondents also suggest, in passing, that the district coordinator lacked authority to address the abandonment issue in its 2007 jurisdictional ruling because NRB rules assign abandonment claims to the district commission. The argument is immaterial, as the issue plainly could have been raised in the 2008 enforcement proceeding.

*Newstress Int'l, Inc.*, 2007 VT 83, ¶ 6, 182 Vt. 282, 938 A.2d 1215. It is a concept easy to confuse with the simple authority to act, and we have, accordingly, been careful to limit the concept in Act 250 and other administrative contexts, where the agency generally exercises limited powers and "virtually any disagreement with its actions can be phrased in jurisdictional terms." *In re Denio*, 158 Vt. 230, 235, 608 A.2d 1166, 1169 (1992); accord *Passion v. Dep't of Soc. & Rehab. Servs.*, 166 Vt. 596, 599, 689 A.2d 459, 463 (1997) (mem.); *In re Wildcat Constr. Co.*, 160 Vt. 631, 632, 648 A.2d 827, 828 (1993) (mem.). This is not a case where the parties fundamentally "failed to adjudicate the case in the proper statutorily designated administrative tribunal before proceeding to the superior court." *Brace v. Vergennes Auto, Inc.*, 2009 VT 49, ¶ 16, 186 Vt. 542, 978 A.2d 441 (mem.). Accordingly, we find no reason to exempt respondents' claim from the general claim-preclusion rules, and affirm the judgment on this basis.

*Affirmed.*