2006 VT 116

## David Berge v. State of Vermont

[915 A.2d 189]

No. 05-437

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 9, 2006

*Robert A. Gensburg* of *Gensburg, Atwell & Broderick,* St. Johnsbury, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Jacob A. Humbert*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff David Berge appeals from a summary judgment of the Washington Superior Court rejecting his claim to an easement by necessity on the ground that his property was accessible by navigable water. For the reasons set forth below, we disagree with

the trial court ruling, and accordingly reverse and remand for further proceedings.

¶ 2. The material facts are not in dispute. In 1959, Florence Davis subdivided her estate, conveying 7,001 acres to the State of Vermont. That conveyance comprises the majority of the acreage of what is now the Bill Slydak Wildlife Management Area (WMA). The 7,001 acres did not represent all of Davis's holdings in the area; she reserved, among other parcels, a lot of approximately thirty-eight acres on the western shore of Norton Pond, known as the Norton Pond Exclusion. The 1959 deed reserved no express easement for access to the Norton Pond Exclusion across the land conveyed to the State.

¶ 3. In 1961, Davis conveyed the Norton Pond Exclusion to George McDonald and Bruce Washburn. The 1961 deed again contained no reference to any easement across the WMA. McDonald and Washburn subdivided the Norton Pond Exclusion into eighteen lots, reserving a right of way for each lot over every other lot in the subdivision. In 1997, plaintiff purchased two of the lots from a successor in title to McDonald and Washburn. Since then, plaintiff has regularly accessed the property by car over a gravel road that begins on Route 114, runs across land formerly owned by the Brown Company (a stranger to Davis's original title), and then across the WMA to his property.[1] Although plaintiff owns a fishing boat which he launches in the spring from a public boat-access on the opposite shore, he stated without contradiction that he does not use the boat to access the property.

¶ 4. The instant controversy arose when the State placed a gate across the Route 114 access road, depriving plaintiff of overland access to his property. Plaintiff filed a complaint in superior court, seeking to enjoin the State's obstruction. He asserted, among other claims, that the 1959 deed had created an easement by necessity for the benefit of his property over the land conveyed to the State. The State moved for summary judgment, maintaining that plaintiff's ability to access his property by water, across Norton Pond, defeated a finding of necessity. The trial court agreed, and accordingly granted the motion and entered judgment in favor of the State. This appeal followed.

---

[1] In 1972, the State acquired a right-of-way across the former Brown property to Route 114.

¶ 5. We review a summary judgment applying the same standard as the trial court. *Kelly v. Lord*, 173 Vt. 21, 42, 783 A.2d 974, 990 (2001). To prevail, the moving party must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *In re Champlain Oil Co.*, 2004 VT 44, ¶ 10, 176 Vt. 458, 852 A.2d 622; V.R.C.P. 56(c). In determining whether an issue of material fact exists, the nonmoving party receives the benefit of all reasonable doubts and inferences. *Robertson v. Mylan Laboratories, Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356, 848 A.2d 310.

¶ 6. Our common law has long recognized that "when, as a result of the division and sale of commonly owned land, one parcel is left entirely without access to a public road, the grantee of the landlocked parcel is entitled to a way of necessity over the remaining lands of the common grantor or his successors in title." *Traders, Inc. v. Bartholomew*, 142 Vt. 486, 491, 459 A.2d 974, 978 (1983); see *Smith v. Higbee*, 12 Vt. 113, 123 (1840) (recognizing easements of "necessity" where essential to the "enjoyment of the principal thing conveyed"); *Willey v. Thwing*, 68 Vt. 128, 131, 34 A. 428, 428-29 (1896) (acknowledging existence of easement where "necessary to the enjoyment of the land"). In *Okemo Mountain, Inc. v. Town of Ludlow*, we outlined the basic requirements for an easement by necessity as: "(1) there was a division of commonly owned land, and (2) the division resulted in creating a landlocked parcel." 171 Vt. 201, 206, 762 A.2d 1219, 1224 (2000). The easement is said to remain in effect so long as the necessity exists. *Traders*, 142 Vt. at 493, 459 A.2d at 979.

¶ 7. Although plaintiff opposed the State's motion here on the ground that his property — having originated from a division of commonly owned land that resulted in a parcel lacking access to a public road — satisfied the fundamental requirements for an easement by necessity, the trial court did not address these criteria. Instead, the court concluded that plaintiff's claim was defeated solely by virtue of the fact that he could reach the property by water. In so holding, the court stated that "'necessity' is the operative term in the doctrine," and explained that it could not recognize an easement "merely because water access is not as desirable as the road access that is sought." The court relied on a few early Vermont decisions characterizing the requisite standard as one of "strict necessity," as

well as several out-of-state decisions adhering to the view that water access, unless completely useless, bars a finding of necessity.

¶ 8. While the court's conclusion is understandable given the relatively little attention accorded the easement-by-necessity doctrine in recent years, it is nevertheless erroneous in several respects. The term "strict necessity" first appeared in our law in *Howley v. Chaffee*, 88 Vt. 468, 474, 93 A. 120, 122 (1915). The issue there, however, was not whether the Court should apply a rule of "strict" or "loose" necessity in easement-by-necessity cases. Indeed, there was no dispute that the plaintiff could not show necessity because his parcel "front[ed] on one of the principal streets of the city." *Id.* at 473, 93 A. at 122. The issue instead was whether a reservation of an easement by implication, a separate doctrine, required the element of necessity as defined for an easement by necessity, or some other standard easier to meet. See *id.* The answer was that the implied reservation required necessity as defined in the easement by necessity cases, particularly in *Dee v. King*, 73 Vt. 375, 50 A. 1109 (1901). To the extent the Court used the word "strict," it was to compare the elements in the different theories; that is, the plaintiff strictly had to show necessity and nothing less. See *Poronto v. Sinnott*, 89 Vt. 479, 481-82, 95 A. 647, 648 (1915) (summarizing holding in *Howley* that "strict necessity" is required in a case of easement by implied reservation).

¶ 9. In *Dee*, the plaintiff also was able to access his property, but only over a hill that could not "be crossed without making several turns, and then only with very light loads." 73 Vt. at 377, 50 A. at 1110. The Court drew a fundamental distinction — to which we have repeatedly returned — between "extreme inconvenience," which would not justify an easement by necessity, and "necessity, and not convenience, that gives the right." 73 Vt. at 378, 50 A. at 1110; accord *Tallarico v. Brett*, 137 Vt. 52, 58, 400 A.2d 959, 963 (1979); *Howley*, 88 Vt. at 478, 93 A. at 122. As *Dee* explained, the plaintiff's access to his property was "inconvenient and expensive" but not "impracticable," and therefore was not so deficient as to invoke the doctrine. 73 Vt. at 378, 50 A. at 1110. Although definitions in other jurisdictions vary, it is noteworthy that states requiring strict necessity often employ similar language. See, e.g., *Johnston v. Shoults*, 160 S.W.3d 440, 442 (Mo. Ct. App. 2005) ("Strict necessity has been interpreted to mean the absence of a reasonably practical way to and from plaintiff's land . . . ."); *Watson v. Dundas*, 136 P.3d 973, 979 (Mont. 2006) ("Strict

necessity means a lack of practical access to a public road for ingress and egress.").

¶ 10. Therefore, if there is a distinction to be drawn from our prior decisions, it is between mere inconvenience and necessity, with a lack of reasonably practical access required to find an easement by necessity. Thus understood, the record here leaves no doubt that without use of the road across State land, plaintiff would have no reasonably consistent, *practical* means of reaching his property; rather, he would be subject to the constant vicissitudes of motor boats, weather, and water conditions. In addition, he would have virtually no access for those periods of the year when the pond could not be safely traversed because of ice or snow.[2]

¶ 11. The real lesson of these cases, however, lies in the nature of the property interest protected. On this point, the holding of *Traders* is significant. As we there explained, "since the easement is based on social considerations encouraging land use, its scope ought to be sufficient for the dominant owner to have the reasonable enjoyment of his land for all lawful purposes." 142 Vt. at 494, 459 A.2d at 979-80. Earlier cases foreshadow this emphasis on land use protection. See *Thwing*, 68 Vt. at 131, 34 A. at 428-29 (recognizing that an easement must be "necessary to the enjoyment of the land"); *Wiswell v. Minogue*, 57 Vt. 616, 621 (1885) (holding that easement arises from the "necessity of a right of way to the reasonable use and enjoyment of land"); *Higbee*, 12 Vt. at 123 (finding that easement requires showing of necessity "to the enjoyment" of the property).

¶ 12. Plainly, without use of the road, plaintiff would lack any practical means of access for the "reasonable enjoyment of his land." While the property may be accessible by water for part of the year, the State made no real claim — and the trial court here made no finding — that this represents access adequate for reasonable enjoyment of the property. We depend on roads and automobiles for

---

[2] On this point, the dissent states that plaintiff conceded that the road "is not generally passable between late November and the time 'the Access Road becomes passable in the spring,'" and that year-round access by car "is not available to him now." *Post*, ¶ 22. That is not an accurate statement of plaintiff's discovery response. He described the Berge property as his "principal residence." He explained that he uses the access road "very frequently" from the time the road becomes passable in the spring and stated: "I also use the Access Road to get to the Berge property in the winter."

transporting not only our family and friends, but all our basic necessities to and from our homes,[3] and it is a quaint but ultimately pointless fiction to pretend that water — much less ice — represents a sufficient substitute.

¶ 13. Although the trial court here relied on the principle, accepted in a few other jurisdictions, that water access defeats an easement by necessity, this view has not been adopted in Vermont, and it is contrary to the trend in most other jurisdictions. The nearest Vermont decision on point is *Clark v. Aqua Terra Corp.*, 133 Vt. 54, 329 A.2d 666 (1974). The dispute there arose from an 1857 conveyance of a point of land on Lake Champlain to the United States for the construction and operation of a lighthouse. *Id.* at 56, 329 A.2d at 667. The property was bounded to the south, east, and west by water, and on the north by property retained by the original owner, Danforth Mott. *Id.* Many years later, defendant Aqua Terra Corporation — a successor-in-interest to the Mott parcel — blocked access by the subsequent purchasers of the lighthouse property, the Clarks, to a roadway leading from the point to the town road, resulting in the lawsuit. *Id.* at 57, 329 A.2d at 667-68.

¶ 14. The trial court ruled in favor of the Clarks on the basis of adverse possession. Although defendant challenged the factual basis of the ruling, Chief Justice Barney gave scant attention to its claims, observing that the weight of the evidence was for the trial court to decide. "But assuming the facts to be as the defendant urges them," the Chief Justice continued, "the result in this case would not be affected." *Id.* at 57, 329 A.2d at 668. For the simple fact was, as Chief Justice Barney had earlier observed, the original grant from Mott to the United States gave rise to an easement by necessity at the very outset. "Under the law of Vermont the circumstances of this grant from the Motts to the United States would generate in the United States a right-of-way by necessity." *Id.* at 56, 329 A.2d at 667.

¶ 15. The trial court here dismissed *Aqua Terra* as "of little assistance," noting that it contained little analysis of the easement-by-necessity issue and no direct discussion of the effect, if any, of access to the property by means of Lake Champlain. We do not believe, however, that the case is so easily dismissed. The Court was emi-

---

[3] As an example, plaintiff in his interrogatory response described some seventeen contractors who had worked on improvements to his house and used the access road to reach the house. Included were persons who "assisted in delivering the frame on site by vehicle."

nently aware of the availability of this alternative means of access. Indeed, Chief Justice Barney observed in the opinion's second sentence that "[t]he position of the defendant would cut off all access except by water or over winter ice." *Id.* at 55-56, 329 A.2d at 667. Moreover, in *Traders*, we cited *Aqua Terra* not once, but three times, for the principle that an easement by necessity arises at the instant the original property is divided, and remains in existence so long as the necessity exists. *Traders*, 142 Vt. at 492, 459 A.2d at 979 ("At that instant, a way of necessity arose over the lands severed for the benefit of the original grantor.") (citing *Aqua Terra*, 133 Vt. at 57, 329 A.2d at 668); *id.* at 493, 459 A.2d at 979 ("In this case, plaintiff's predecessors acquired a way of necessity in 1943, through their grantor, the common owner.") (citing *Aqua Terra*, 133 Vt. at 57, 329 A.2d at 668); *id.* at 493-94, 459 A.2d at 979 ("Therefore such a way exists only so long as the necessity which creates it: if, at some point in the future access to plaintiff's land over a public way becomes available, the way of necessity will thereupon cease.") (citing *Aqua Terra*, 133 Vt. at 56-57, 329 A.2d at 668).

¶ 16. Even if we accept the trial court's dismissal of *Aqua Terra* as binding authority, however, the question remains whether our other precedents or sound policy support the navigable-water exception. The trial court concluded that we must apply the exception because it was the law in 1959, at the time of the original conveyance in this case. We disagree for two reasons. First, as noted, our case law has long made practical access to a *public road* the linchpin of the easement-by-necessity doctrine. This was the law at the time of the original conveyance in 1959, and it remains so today. Indeed, the navigable-water exception has been widely regarded by courts and commentators as archaic and unrealistic for many decades. See generally *Cale v. Wanamaker*, 296 A.2d 329, 333 (N.J. Super. Ct. Ch. Div. 1972) ("Although some courts have held that access to a piece of property by navigable waters negates the 'necessity' required for a way of necessity, the trend since the 1920's has been toward a more liberal attitude in allowing easements despite access by water . . . ."); Note, *Property Law — Minnesota's Lakeshore Property Owners Without Road Access Find Themselves Up a Creek Without a Paddle — In re Daniel for the Establishment of a Cartway*, 30 Wm. Mitchell L. Rev. 725, 751 ("Since 1966, the vast majority of cases addressing water access have similarly found water access to be unreasonable in light of current modes of transportation."); E. Kellett, Annotation,

*Easements: Way by Necessity Where Property is Accessible by Navigable Water*, 9 A.L.R.3d 600, 603 (1966) ("The 'trend,' if it may be so called, toward a more liberal attitude in allowing easements despite access by water, might therefore be explained as a tacit recognition of the fact that most people today think in terms of 'driving,' rather than 'rowing,' to work, home, or market.").

¶ 17. The trial court relied on decisions from other states that had decided the question many years ago and, because of stare decisis, have consistently adhered to their early precedents.[4] Vermont, however, had not addressed the effect of navigable waters on easements by necessity at the time of the conveyance in this case, and there is no way to definitively determine what we might have decided in 1959. Nevertheless, the same reasons that militate against accepting water access as a legally adequate substitute today would, in our view, have applied with equal force then.

¶ 18. Second, we are not, in fact, persuaded that we must apply different versions of the common law based on when interests in land arise, and act as if we were judges at that time. The issue here is about use. As the Restatement (Third) of Property (Servitudes) § 2.15 cmt. d (2000) states:

> What is necessary depends on the nature and location of the property, and may change over time. Access by water, while adequate at one time, is generally not sufficient to make reasonably effective use of property today. Land access will almost always be necessary, even though water access is available. . . .
>
> Until recently, access for foot and vehicular traffic tended to be the only rights regarded as necessary for the enjoyment of surface possessory estates. However, the increasing dependence in recent years on electricity and telephone service, delivered through overland cables, justify the conclusion that implied servitudes by necessity will be recognized for those purposes.

---

[4] The New York cases on which the trial court relied go back at least as far as *Staples v. Cornwall*, 99 N.Y.S. 1009 (App. Div. 1906); the Maine decisions at least to *Kingsley v. Gouldsborough Land Imp. Co.*, 29 A. 1074 (Me. 1894), which relied in turn on *Lawton v. Rivers*, 13 S.C.L. 445 (2 McCord 445).

We should not freeze the common law in time, holding that for some landowners water access is sufficient, and for others it is not, or that some landowners can have electricity but others cannot. Today's standards compel the conclusion that access to navigable water is generally not legally sufficient, standing alone, to defeat a finding of necessity.

¶ 19. Because its holding was based solely on the erroneous conclusion that water access defeated plaintiff's easement-by-necessity claim, the trial court failed to address or make findings related to the essential elements of the claim, the location of the easement if those elements are satisfied, and any related defenses to be raised by the State. Accordingly, the matter must be remanded for further proceedings.

*Reversed and remanded.*

¶ 20. **Reiber, C.J.**, dissenting. Because I believe that the trial court was correct in granting summary judgment to the State, I respectfully dissent. The majority opinion amply details the underlying facts; I write briefly to express my disagreement with the legal conclusions therein.

¶ 21. The trial court's grant of summary judgment rested largely on Maine and New York cases standing for the proposition that access to a public road via navigable water defeats a claim for strict necessity. See *Murch v. Nash*, 861 A.2d 645, 652 (Me. 2004) (holding that while "absolute physical impossibility" is not required for strict necessity, "[l]and abutting navigable water is not entitled to an easement by necessity simply because water access to the parcel is inconvenient."). See also *Littlefield v. Hubbard*, 128 A. 285, 286-87 (Me. 1925) (reciting rule that "where land borders on the ocean, a public highway, there exists no way of necessity"); *Estate of Thompson v. Wade*, 499 N.Y.S.2d 541, 542 (App. Div. 1986) (stating that "[a]n easement by necessity cannot arise when access is available through a publicly used waterway"); *Peasley v. State*, 424 N.Y.S.2d 995, 1002 (Ct. Cl. 1980) (finding that owner with water access is not entitled to easement of necessity through state park); *McQuinn v. Tantalo*, 339 N.Y.S.2d 541, 542 (App. Div. 1973) (stating that "since appellants' land is accessible by navigable water which the appellants have the right to use, no way of necessity exists"). I recognize that a majority of jurisdictions disagree, but the Maine and New York cases represent reasoning that is more in line with our

traditionally strict adherence to necessity, and that better serves the purposes underlying easements by necessity.

¶ 22. Where, as here, the property in question is a relatively remote property always used as a seasonal camp, water access may be entirely reasonable and practical for the limited use the property is subject to. At a minimum, water access may be very nearly as practical as the best reasonably available access by land. As plaintiff himself concedes, even his access via the claimed easement is highly weather-dependent and is not generally possible between late November and the time "the Access Road becomes passable in the spring." The majority states that "[w]hile the property may be accessible by water for part of the year, the State made no real claim — and the trial court here made no finding — that this represents access adequate for reasonable enjoyment of the property." *Ante*, ¶ 12. The majority further asserts that "the record here leaves no doubt that without use of the road across State land, plaintiff would have no reasonably consistent, *practical* means of reaching his property." *Ante*, ¶ 10. This reading of "reasonable access" suggests a quality of access that is much more than we have ever applied to an easement-by-necessity case and, indeed, a quality that neither plaintiff nor his predecessors in title have ever enjoyed. See *Dee v. King*, 73 Vt. 375, 378, 50 A. 1109, 1110 (1901) (holding that "inconvenient and expensive" access would defeat easement by necessity, and making no mention of feasibility or possibility of year-round access by land). Exactly how far the majority opinion goes is unclear, but the opinion appears to assume that "reasonable access" means year-round access by car, which plaintiff concedes is not available to him now.

¶ 23. I also take issue with the bright line the majority would draw between water access (no matter how convenient, practical or longstanding) on the one hand, and land access (no matter how inconvenient or impractical) on the other. The former, it seems to hold, will never be sufficient to defeat an easement by necessity. The latter, by contrast, will virtually always be sufficient to defeat such an easement, based on our many prior decisions the majority cites with approval. But such a simplistic rule is neither necessary nor just. The Maine courts have found that temporary or seasonal disruptions in access are insufficient to render a waterway so unuseable as to create an easement by necessity. See *Welch v. State*, No. RE-02-60, 2006 WL 381766, at *7 (Me. Super. Jan. 19, 2006) (declining to find easement by necessity where travel across a frozen lake was common

at time necessity arose); see also *Murch*, 861 A.2d at 652 (holding that property had sufficient access to a public road via boat even though tides were too low for boat access for several hours each day and dock had to be removed in winter). As the Maine courts have held, water access, like land access, does not need to be perfect: temporary, predictable disruptions do not landlock a parcel with frontage on navigable waters, any more than similar seasonal disruptions to land access would landlock the same parcel. We have previously held, as the majority notes, that even land access resulting in "extreme inconvenience" will defeat an easement by necessity. *Dee*, 73 Vt. at 378, 50 A. at 1110. The majority opinion begs the question why equally inconvenient water access will not do the same.

¶ 24. Moreover, the bright line between water and land access, seductive though it is, gives only the shortest shrift to the countervailing policy concerns that have historically animated our reluctance to so easily grant easements by necessity. The public's interest in access to landlocked property must be balanced against the serious consequences inherent in granting one landowner an uncompensated interest in the property of a neighbor. See *Hyde v. Town of Jamaica*, 27 Vt. 443, 460 (1855) (affirming preeminent legal and constitutional standing of real property); see also *Burling v. Leiter*, 262 N.W. 388, 391 (Mich. 1935) ("If we adopt any other rule than that of strict necessity, we open the door to doubt and uncertainty, to the disturbance and questioning of titles, and to controversies as to matters of fact outside the language of the deed.").

¶ 25. I also dissent because I believe that the majority's reliance on *Clark v. Aqua Terra Corp.*, 133 Vt. 54, 329 A.2d 666 (1974), is misplaced. *Aqua Terra* was decided as a prescriptive-easement case. The discussion of easements by necessity is limited to a few sentences and must be viewed as dicta. Even if it could be characterized as an alternate holding, the decision provided no analysis, and I find the more developed reasoning from the above-mentioned Maine and New York cases more persuasive.

¶ 26. I note finally that plaintiff had constructive notice, both of Vermont's adherence to strict necessity and of his lack of overland access to a public road, when he purchased the property in 1997. Therefore I do not consider any claimed inconvenience to plaintiff to be sufficient to justify imposing potentially great burdens on the neighboring property owners, whoever they may be.

¶ 27. For the above reasons, I would affirm the trial court's grant of summary judgment.