NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 137

No. 2018-146

| Matthew Gray and Erik Gray | Supreme Court |
|---|---|
| v. | On Appeal from Superior Court, Washington Unit, Civil Division |
| Martha Treder, John Muscarelle, Robert Muscarelle, Joseph Muscarelle, III, Anne Herrera, Edward F. Godfrey, Judith C. Godfrey, et al. | October Term, 2018 |

Mary Miles Teachout, J.

Paul S. Gillies of Tarrant, Gillies & Richardson, LLP, Montpelier, for Plaintiffs-Appellees.

Christina A. Jensen of Lisman Leckerling, P.C., Burlington, for Defendants-Appellants
 Martha Treder, John Muscarelle, Robert Muscarelle, Joseph Muscarelle, III, and Anne Herrera.

Kevin M. Henry of Primmer Piper Eggleston & Cramer PC, Burlington, for Defendants-Appellants
 Edward F. and Judith C. Godfrey

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **ROBINSON, J.** This case centers around plaintiffs' landlocked ninety-acre parcel on Roxbury Mountain. Defendants appeal the trial court's decision following a contested hearing that the plaintiffs' parcel includes an appurtenant easement by necessity that crosses some of defendants' properties. They further contend that the trial court erred in holding that Vermont's Marketable Record Title Act has not extinguished that easement. We do not decide whether an easement by necessity arose in the first place because we conclude that even if it had, the Act would have extinguished it. Accordingly, we reverse.

¶ 2.     The trial court found the following.  The lot at issue, identified by the parties as "the Eaton Lot," currently has neither frontage on a public road nor deeded access to one.  Before 1948, it was part of a larger parcel of land that stretched west to a public highway called Senor Road.  In 1948, the large parcel's owner, Henry Brooks, sold the western part of it—the part that fronted Senor Road—to Lester and Arlene Senor, retaining the Eaton Lot in his ownership.  The parties describe this western part as "the Front Lot."  The Brooks-Senor deed did not reserve an express appurtenant easement for access to the Eaton Lot via the Front Lot.

¶ 3.     The Senors began to sell pieces of the Front Lot in the mid-1970s.  Some of defendants—the Muscarelles, Godfreys, Whittles, and Ambrianos—now own the parcels that comprised the Front Lot.  The Ambrianos access their property directly from Senor Road; the Whittles, Godfreys, and Muscarelles access their properties from a private road called Old Farm Lane.  Old Farm Lane was created pursuant to a deeded easement from the Senors, and it runs between the Whittle and Ambriano parcels for 800 feet before entering the Godfreys' property and ending where the Godfreys' driveway begins.  It does not reach the Eaton lot.  The schematic below reflects the general layout of the parties' properties.[1]



---

[1]  This schematic was not included in the trial court's findings.  We include it here to provide a general visual sense of the relationships among the parties' properties.

¶ 4.      There are no visible logging or other roads or pathways leading from the Eaton Lot continuously across the Front Lot to Senor Road at the present time.  Plaintiffs have recently located three physical features at the back of the Front Lot that suggest remnants of portions of a logging road: an open line through woods where there are no tall trees down the center but there are tall trees on either side, suggestive of a cleared roadway; a length of a ten-foot-wide depressed area the width of an old roadway with what have been described as wheel tracks; and a stone wall that crosses a portion of the Front Lot with an opening in line with the other two features that is consistent with a roadway passing through it.  The Muscarelles purchased their lot in 1974.  At that time, the above features were not visible enough to be noticed by then nine-year-old John Muscarelle.

¶ 5.      In 2009, plaintiffs bought the Eaton Lot.  Along with other family members, they already owned a 130-acre wooded lot, called the Mountain Lot, adjacent to and north of the Eaton Lot.  As a result of a separate lawsuit in the early 2000s, they did not have the legal access to the Mountain Lot that they once believed they had, rendering the Mountain Lot potentially landlocked.  After that, plaintiffs began looking for other ways to access the Mountain Lot.  They bought the adjacent Eaton Lot believing it had either a deeded easement or a way of necessity over the Front Lot.  Prior rulings in this case have made clear that there is in fact no express deeded easement over the Front Lot for access to the Eaton Lot.  Plaintiffs have accessed the Eaton Lot by crossing the lot of their southern neighbors, the Kathans, with the Kathans' permission, but that permission is temporary only and provides no legal right of access for the future.

¶ 6.      Plaintiffs filed suit in February 2011, alleging, among other things, that an easement by necessity arose when the Eaton Lot was separated from the Front Lot in 1948.  Plaintiffs requested a declaratory judgment establishing their right to reach the Eaton Lot via Old Farm Lane and a right-of-way over the Muscarelles's land.

3

¶ 7. After a three-day bench trial, the court issued a decision holding that an easement by necessity arose when the Eaton Lot was severed from the Front Lot in 1948, and the Marketable Record Title Act did not extinguish the easement because, since it was created as a matter of law due to the effect of the 1948 recorded Brooks-Senor deed, it fell into an exception in the Act that exempts from extinguishment easements "granted, excepted, or reserved by a recorded instrument." The court alternately held that the Act did not extinguish the easement because the easement arose from the 1948 Brooks-Senor deed, which was the "root" conveyance starting the period of examination under the Act.

¶ 8. On appeal, defendants challenge the court's holding that an easement by necessity arose as a result of the 1948 transfer of the Front Lot from Brooks to the Senors. They also challenge the court's holding that the Act did not extinguish the easement by necessity. They argue that they and their predecessors had held title to their properties for over forty years without any conveyance or other event purporting to create an interest in any other person, as required under the Act, and none of the statutory exceptions saved the claimed easement from extinguishment.

¶ 9. Whether the Act extinguished the claimed easement by necessity is a question of statutory interpretation, which we review without deference to the trial court. Stowell v. Action Moving & Storage, Inc., 2007 VT 46, ¶ 9, 182 Vt. 98, 933 A.2d 1128. "When interpreting statutes, our goal is to effectuate the intent of the Legislature. To do so, we look first to the language of the statute and, if the meaning is clear, enforce the statute according to its terms." Id. (citation omitted).

¶ 10.    We conclude that even if an easement by necessity in favor of the Eaton Lot arose in 1948, because it has remained unrecorded, the Act has extinguished it.[2] We base this conclusion primarily on the plain language of the Act and the inapplicability on its face of the extinguishment exception relied upon by plaintiffs. The structure and purpose of the Act further bolster our analysis. We conclude that neither the public policy against inaccessibility of land, nor the principle that statutory modifications to the common law must be clear, overcome the plain language of the statute.

¶ 11.    The Marketable Record Title Act provides that "[a]ny person who holds an unbroken chain of title of record to any interest in real estate for 40 years, shall at the end of that period be deemed to have a marketable record title to the interest" that is "subject only to such claims to the interest and such defects of title as are not extinguished or barred under this chapter." 27 V.S.A. § 601(a). One who has marketable title under the Act holds it "free and clear of any and all interests" arising out of "any act, transaction, event or omission that occurred prior to such 40-year period." Id. § 603.

¶ 12.    The chain of title is considered "unbroken" when "the official public records disclose . . . [a] conveyance not less than 40 years in the past, executed and recorded according to law, which purports to create such interest in such person with nothing appearing of record during the 40-year period purporting to divest the person of the purported interest." Id. § 602(a)(1). Accordingly, the Act will not extinguish an interest "if the holder of the interest files for record within the 40-year period, a notice in writing . . . setting forth the nature of the claim." Id. § 603.

¶ 13.    The Act contains a list of interests that it does not extinguish, two of which are relevant to our analysis. First, the Act does not extinguish "any easement or interests in the nature of an easement . . . the existence of which is clearly observable by physical evidences of its use."

---

[2]    Accordingly, we assume only for the purposes of our discussion of the Act that the 1948 deed created an easement by necessity. We do not purport to decide whether that assumption is accurate.

Id. § 604(a)(6). Second, it does not extinguish "any easement or interest in the nature of an easement, or any rights appurtenant thereto granted, excepted, or reserved by a recorded instrument creating such easement or interest." Id. § 604(a)(7). Defendants rely on the latter of these exceptions on appeal.

¶ 14. By its plain terms, the Act extinguishes any unrecorded easement by necessity that may have arisen as a result of the 1948 transfer severing the Front Lot and the Eaton Lot unless one of the statutory exceptions to extinguishment applies. Defendants, or their predecessors in title, have held title to their respective properties for more than forty years, and thus hold their properties "free and clear of any and all interests" arising out of any "act, transaction, event or omission" that occurred before that forty-year period—subject only to claims to interests not extinguished by the Act. The central question on appeal is whether the claimed easement by necessity is among those that survive the extinguishment of interests effected by the Act.

¶ 15. An implied easement by necessity, the existence of which is not clearly observable by physical evidence of its use, is not among those interests excepted from extinguishment. Although an easement may survive pursuant to § 604(a)(7) if it was "granted, excepted, or reserved by a recorded instrument," the claimed easement in this case was not granted, excepted, or reserved by such an instrument. A way of necessity is not granted. It is "a fiction of law" that arises only in the absence of a deeded right of access to a landlocked parcel.[3] Myers v. LaCasse, 2003 VT 86A, ¶ 16, 176 Vt. 29, 838 A.2d 50 (quotation omitted). In fact, an easement by necessity, far from being granted by the grantor, may even "thwart[] the intent of the original grantor or grantee." Traders, Inc., 142 Vt. at 491, 459 A.2d at 978. By definition, interests implied by operation of law, as easements by necessity are, do not fall within the statutory

---

[3] An easement by necessity is deemed to arise when a property is divided in a way that cuts off one parcel from access to a public road. Traders, Inc. v. Bartholomew, 142 Vt. 486, 491, 459 A.2d 974, 978 (1983). It provides the grantee of the landlocked parcel access across the remaining property of the common grantor to a public road. Id.

6

category of interests "granted . . . by a recorded instrument." Id. § 604(a)(7). To conclude otherwise would stretch the language of the statute beyond its plain meaning. Had the Legislature intended to include among the interests that are not extinguished by the Act interests that arise by operation of law in the absence of a deeded right, it would have said so. See, e.g., State v. Rosenfield, 2016 VT 27, ¶ 9, 201 Vt. 383, 142 A.3d 1069 ("Had the Legislature intended for the statute to have that effect, it would have included such language.") Based on the plain language of the statute, we conclude that plaintiffs' claimed easement is not exempt from extinguishment by virtue of § 604(a)(7), and thus has not survived the operation of the Marketable Record Title Act.[4]

¶ 16. Our conclusion is bolstered by the structure and purpose of the Act. The Marketable Record Title Act provides bona fide purchasers repose with respect to claims of which they have no notice. Merritt v. Merritt, 146 Vt. 246, 252, 500 A.2d 534, 537-38 (1985). To that end, it extinguishes interests in property outside of those reflected in an unbroken chain of title going back more than forty years, with limited exceptions.

¶ 17. Both provisions in the Act specifically excepting easements, or easement-like interests, from extinguishment involve easements that can be readily identified by a prospective purchaser or owner of property. One excepts easements "the existence of which is clearly observable by physical evidence of use," and one excepts easements "granted, excepted, or reserved by a recorded instrument." 27 V.S.A. § 604(a)(6), (7). By contrast, plaintiffs' construction of the statute would except from extinguishment easements arising in the distant past

---

[4] For the same reason, we reject the trial court's alternate holding that, because the 1948 Brooks-to-Senor deed was the "root deed" for the purposes of a title search, the interest it created fell within the forty-year window established by the Act. Had the root deed reserved an easement in favor of the Eaton Lot, that easement would be a matter of record reflected in the deed establishing plaintiffs' rights as of the beginning of the forty-year look-back period. But plaintiffs' claim is that the easement arose not from the terms of the deed but by operation of law on the basis of a 1948 transaction, given certain factors outside of the transaction itself. This is not an interest disclosed in "the official public records." Unless plaintiffs' claim was preserved by a notice filed within forty years of its creation pursuant to 27 V.S.A. §§ 603 and 605, or it was an interest excluded from the extinguishing effect of the Act pursuant to § 604, it was effectively extinguished in 1998.

by operation of law, in some cases based on factors such as topography that may not be reflected in the land records. In fact, the validity of such claims may ultimately depend on judgments by courts weighing the various factors to determine whether, for example, a property truly lacks access. See, e.g., Berge v. State, 2006 VT 116, ¶ 18, 181 Vt. 1, 915 A.2d 189 (holding water access to property did not defeat easement by necessity because it would not allow plaintiff a reasonably practical, consistent way to access his property); Dee v. King, 73 Vt. 375, 377-78, 50 A. 1109, 1110 (1901) (holding that easement by necessity did not exist where plaintiff was able to access his property via tortuous path that could only support light loads, which made access inconvenient and expensive but not impossible). Plaintiffs' construction of the statute would leave property owners vulnerable indefinitely to claimed interests in land never recorded in the land records and not apparent on the land itself—exactly the kinds of interests the Act is designed to extinguish. See, e.g., 27 V.S.A. § 602 (defining "unbroken chain of title" with reference to information in "the official public records").

¶ 18. The Act provides ample opportunity for people with claimed interests arising by operation of law to preserve their claims. The statute sets forth a mechanism for providing written notice in the land records, id. § 605, and provides that the claim is preserved only if the notice is filed within the forty-year period after the event giving rise to the claim. Id. § 603. In the absence of actually using the claimed easement and leaving physical evidence of that use on the ground, plaintiffs' predecessors in title had forty years from the 1948 transfer severing the Front Lot from the Eaton Lot to file notice of their claim to an easement by necessity. Id. They did not do so. To allow them to assert their claim now would not only run afoul of the plain language of the Act, but would fly in the face of the Act's purpose.

¶ 19. Neither of the countervailing interpretive principles relied upon by the trial court persuades us otherwise. We acknowledge, as the trial court emphasized, that "[t]he common law is changed by statute only if the statute overturns the common law in clear and unambiguous

8

language, or if the statute is clearly inconsistent with the common law, or the statute attempts to cover the entire subject matter." Langle v. Kurkul, 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986). But we conclude that the statute's omission of easements implied by law from those preserved beyond forty years is not unclear or ambiguous; it is an aspect of a thorough recitation by the Legislature of the various kinds of interests that are not extinguished by operation of the Marketable Record Title Act.

¶ 20. Likewise, we recognize that the result of our analysis undermines the public policy against inaccessibility of land. See, e.g., Traders, 142 Vt. at 491, 459 A.2d at 978 (explaining that way of necessity rests on public policy that disfavors efforts "to hold land in perpetual idleness" by cutting off access). But this policy is itself in tension with respect for private property rights. See Hyde v. Town of Jamaica, 27 Vt. 443, 460 (1855) (holding that finding right to cross property of another merely on basis of convenience would violate property rights secured "by the laws and the constitution"); Berge, 2006 VT 116, ¶ 24 (Reiber, C.J., dissenting) ("The public's interest in access to landlocked property must be balanced against the serious consequences inherent in granting one landowner an uncompensated interest in the property of a neighbor."). Moreover, it bumps up squarely against the conflicting policy of the Marketable Record Title Act—to provide repose and certainty for bona fide owners of property without notice of claimed interests in their property arising from events that occurred more than forty years ago. See, e.g., Merritt, 146 Vt. at 252, 500 A.2d at 537-38. Resolution of this case does not in any event turn on competing policy considerations but, rather, rests squarely on the plain language of the Marketable Record Title Act.

Reversed.

FOR THE COURT:

_____

Associate Justice

9