VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     22-AP-158



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

NOVEMBER TERM,   2022

Robert L. Greenfield\* & Robin Imbrogno Greenfield\* v. Kimberlee Luce et al.

}
}
}
}
}
}

APPEALED FROM:

Superior Court, Windsor Unit,
Civil Division
CASE NO. 539-11-16 Wrcv
Trial Judge: Robert P. Gerety, Jr.

In the above-entitled cause, the Clerk will enter:

Plaintiffs appeal from the trial court's decision in this declaratory judgment action.  The court rejected plaintiffs' claims of an easement by necessity and an easement by implication across defendants' land.  Plaintiffs argue on appeal that the court erred in evaluating both claims.  We affirm.

### I.  Trial Court's Ruling

### A.  Factual Findings

The trial court made the following findings following a bench trial, some of which are based on the parties' stipulation.  In February 2008, plaintiffs purchased real property (referred to as the "70-acre parcel") in Chester, Vermont.  The 70-acre parcel is located at the center of several adjoining parcels, each of which has road frontage or other means of access to one of three public roads: Flamstead Road, Crow Hill Road, and Trebo Road.  Plaintiffs also own property adjoining the 70-acre parcel, either solely or jointly, that has public road frontage on Crow Hill Road to the west and/or on Trebo Road to the north.  Defendant Luce owns property that adjoins the 70-acre parcel and has public road frontage on Flamstead Road.  Defendants Nancy and Robert Scott own property that adjoins the 70-acre parcel to the north and the Luce parcel to the west; the Scott parcel has public road frontage on Flamstead Road.

Plaintiffs sued defendants in June 2020, arguing in relevant part that they had the right to travel from the 70-acre parcel across defendants' property to Flamstead Road.  The trial court rejected both claims.

In reaching its conclusion, the court recounted the following deed history.  In 1903, a Mr. Davis owned the land comprising the 70-acre parcel and the Luce parcel.  Mr. Davis conveyed land that included the Luce Parcel to a Mr. Colvin in 1903 via warranty deed.  Mr. Davis

reserved and excepted a right-of-way to provide highway access to what is now the 70-acre parcel. This right-of-way did not include any deeded right to cross what is now the Scott parcel; that land was not owned by Mr. Davis at the time of the conveyance.

In 1948, a Mr. Raitanen acquired land referred to as the Wells Farm that included what is now the Scott parcel. In 1950, Mr. Raitanen acquired the 70-acre parcel. In 1960, the Hoars acquired land that encompassed what is now the Luce parcel. That year, the Hoars and Mr. Raitanen exchanged quitclaim deeds to clarify the location of the excepted right-of-way that crossed the Luce parcel and benefitted the 70-acre parcel. In 1966, the Hoars conveyed land including what is now the Luce parcel to the Ohls by warranty deed, subject to the deeded easement benefitting the 70-acre parcel that the Hoars had previously conveyed to Mr. Raitanen. In 1967, Mr. Raitanen participated in a series of deed transactions resulting in all of his land holdings, including the 70-acre parcel and the former Wells Farm (which includes the now-Scott parcel), being held by him and his wife as tenants by the entirety. This 1967 deed stated that the Wells Farm parcel was subject to a certain right-of-way recorded in the land records. The right-of-way referenced in this deed, however, only conveyed back rights to the former 1903 excepted right-of-way that crossed the now-Luce parcel; it did not convey any easement rights crossing the former Wells Farm, including the Scott parcel.

In 1978, after Mr. Raitanen died, Mrs. Raitanen conveyed the 70-acre parcel to the Higginses via warranty deed. At the time of the conveyance, the Higginses owned a parcel of land on Flamstead Road that adjoined the 70-acre parcel. The deed to the Higginses did not include an express easement over the Scott parcel (which Mrs. Raitanen owned at the time) to reach Flamstead Road. The Higginses did not request an express easement and Mrs. Raitenen did not offer one. After the sale, however, Mrs. Raitanen allowed the Higginses to bring logs to Flamstead Road over what is now the Scott parcel.

When the Higginses owned the 70-acre lot, Mr. Higgins believed he had an unrecorded right of access to Flamstead Road over the Luce and Scott parcels and, from time to time, he made use of the roadway to bring logs and other materials to Flamstead Road. Mr. Higgins also believed that access from Crow Hill Road would have provided good access to the entire 70-acre parcel but he did not have a right to cross the land between the 70-acre parcel and Crow Hill Road. The Higginses did not use the alternate access from Trebo Road to the northeast because that access was steep and not as good as the access to the south across the Luce and Scott parcels to Flamstead Road. The Higginses used the Luce/Scott roadway openly and no one informed them that they could not use the roadway. When he used this roadway, it was usable by trucks and logging equipment only, not passenger cars. The roadway would have needed substantial improvements to make it useable by cars. Mr. Higgins sold the 70-acre parcel to a Mr. Wood in 1997. Plaintiffs purchased the 70-acre parcel from Mr. Wood in 2008.

Meanwhile, not long after her conveyance to the Higginses, Mrs. Raitanen conveyed the Scott parcel to the Smiths via warranty deed in 1979. The Scotts purchased the property from the Smiths in 1998. The court found that when the Scotts purchased their parcel, there was a visible rough path from Flamstead Road to the Luce property line. The Scotts improved the path and used part of it for access to their residence on the Scott parcel. Where the rough path crossed onto the Luce property, there was a break or opening in the stone wall suggesting that historically, there was a path or rough road connecting the Luce parcel to the Scott parcel and Flamstead Road.

2

The court found that there was a logging road in 1964/65 that went from Flamstead Road to the 70-acre parcel across what was now the Scott and Luce parcels but this roadway was never used for access to the 70-acre parcel by standard two-wheel drive passenger cars or used to access a residence on the 70-acre parcel. The historical use of the 70-acre parcel was for firewood, logging, gravel extraction, and recreation. The logging road referenced above, was used occasionally to bring firewood from the 70-acre parcel to the then somewhat larger Scott property. It was also used periodically to bring logs, firewood, and gravel from the 70-acre parcel, across the Luce and Scott parcels to Flamstead Road.

The court found that the Luce/Scott route to the south was not the only reasonable access to the 70-acre parcel. Access from the east from Crow Hill Road over an adjoining parcel now owned by plaintiffs would also provide reasonable and practical access to the 70-acre parcel. That access would have to be developed by plaintiffs and, while it would present certain difficulties, it was not impractical or infeasible. It explained that this access was not possible for Mr. Higgins at the time he acquired the 70-acre lot because neither he nor Mrs. Raitanen owned the real property currently owned by plaintiffs that lies between the 70-acre parcel and Crow Hill Road. While the Higginses owned adjoining property that fronted on Trebo Road at the time they purchased the 70-acre parcel, access from Trebo Road was more difficult than the Luce/Scott route given the steepness of the terrain. It was not impossible to access the 70-acre parcel from Trebo Road, however, and the court found that such access was not unreasonable, impractical, or infeasible. In other words, at the time Mrs. Raitanen sold the 70-acre parcel to the Higginses, access to the 70-acre lot was possible, practical, and feasible from Trebo Road to the north.

## B. Legal Conclusions

Based on these and other findings, the court considered plaintiffs' legal claims. Plaintiffs' 70-acre parcel is benefitted by a deeded easement across the Luce parcel to the westerly boundary between the Luce parcel and the Scott parcel. Plaintiffs argued that they had an easement by necessity or an easement by implication over the Scott parcel to Flamstead Road. See generally Traders, Inc. v. Bartholomew, 142 Vt. 486, 491 (1983) (recognizing that easement by implication is "wholly distinct" from easement by necessity and "the two are distinguishable by the circumstances which give rise to them, the policy bases which support them and the legal consequences which flow from them" (citing cases)).

The court explained that, under the modern view of the law, an easement by necessity might arise where access to a parcel was otherwise infeasible, unreasonable, or impractical. See Berge v. State, 2006 VT 116, ¶¶ 6, 10, 181 Vt. 1 (explaining that "when, as the result of the division and sale of commonly owned land, one parcel is left entirely without access to a public road, the grantee of the landlocked parcel is entitled to a way of necessity over the remaining lands of the common grantor or his successors in title" and explaining that "a lack of reasonably practical access [is] required to find an easement by necessity" (quotation omitted)). While "strict necessity" was no longer required, the court explained that plaintiffs needed to show more than that an alternative access way was less convenient. See id. ¶¶ 9, 10 (recognizing that access that is "inconvenient and expensive but not impracticable" does not suffice (quotation omitted)). Applying this standard, the court concluded that plaintiffs failed to show that they had no reasonable and practical access to the property other than through defendants' lands. It found

that plaintiffs had reasonable, practical and feasible access over their adjoining parcel which had frontage on Crow Hill Road.

Turning to an easement by implication, the court explained that to prevail on this claim, plaintiffs needed to show: (1) unity and subsequent separation of title; (2) obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance; (3) use of the premises by the common owner in their altered condition long enough before the conveyance to show that the change was intended to be permanent; and (4) reasonable necessity for the easement. See Chevalier v. Tyler, 118 Vt. 448, 450-51 (1955).

The court concluded that plaintiffs failed to satisfy the last two elements. With respect to the reasonable necessity for the easement, the court found that, at the time of the sale of the 70-acre parcel from Mrs. Raitanen to the Higginses in 1978, there was reasonable access to the 70-acre parcel both from Trebo Road to the north as well as from Flamstead Road to the south via the current Luce/Scott route. Given this, the court concluded that plaintiffs failed to show a "reasonable necessity" for the Luce/Scott easement as an access route at the time of the conveyance. The court also found that, presently, there was also reasonable access to the 70-acre parcel from Crow Hill Road via the plaintiffs' adjoining parcel. The court further found that the use of the Luce/Scott route for access was not intended to be permanent in light of the findings set forth above. Thus, plaintiffs failed to satisfy this requirement as well. The court therefore denied plaintiffs' request for a declaration of an easement by implication or necessity across the Scott parcel for access to the 70-acre parcel. Following entry of a partial final judgment order, this appeal followed.

### III. Arguments on Appeal

#### A. Standard of Review

At the outset, we clarify our standard of review. Our "review of a trial court's findings . . . following a bench trial is limited." Soon Kwon v. Edson, 2019 VT 59, ¶ 23, 210 Vt. 557. "A trial court's factual findings will not be disturbed on appeal unless clearly erroneous when viewed in the light most favorable to the prevailing party." Lofts Essex, LLC v. Strategis Floor & Decor Inc., 2019 VT 82, ¶ 17, 211 Vt. 204 (quotation omitted). We "defer to the [trial] court's determinations regarding the credibility of witnesses and the persuasive effect of the evidence." Id. (quotation and alteration omitted). We will affirm the trial court's conclusions "where they are reasonably drawn from the evidence presented." Id. (quotation omitted). "We review pure questions of law de novo." In re Estate of Kurrelmeyer, 2010 VT 20, ¶ 10, 187 Vt. 620 (mem.).

#### B. Easement by Implication

Plaintiffs first assert that the court misconstrued the pertinent test for an easement by implication and that, if the proper test is applied, they are entitled to judgment in their favor. According to plaintiffs, they alleged an implied easement by grant (rather than by reservation) and thus, they needed only show reasonable necessity rather than strict necessity. They contend that the court applied a strict necessity standard. Plaintiffs appear to assert that the implied

4

easement arose when Mrs. Raitanen conveyed the 70-acre parcel to the Higginses in 1978.[*]  If an easement over the Scott parcel was not implicitly conveyed at that time, plaintiffs assert that the deeded easement crossing the Luce Parcel would lead nowhere.  Plaintiffs cite Wheeler v. Taylor in support of their position and argue that an implied easement across the Scott property is "essential to the beneficial use and enjoyment of the property designated in the grant."  114 Vt. 33, 36 (1944).  Plaintiffs also assert that the access route was well-established before 1978 and it was intended to be permanent.

We conclude that the trial court applied the appropriate standard in evaluating plaintiffs' claim and its conclusions are supported by the findings and the evidence.  As the trial court recognized, our case law holds that the creation of an "easement by implication" requires:

> (1) Unity and subsequent separation of title.  (2) Obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance.  (3) Use of the premises by the common owner in their altered condition long enough before the conveyance to show that the change was intended to be permanent.  (4) Necessity for the easement.  There can be no reservation of an easement by implication unless the easement is one of strict necessity.

Chevalier, 118 Vt. at 450-51 (citation omitted).  The court here looked to whether there was a "reasonable necessity" for the easement at the time of the conveyance, not whether the easement was "one of strict necessity."  While plaintiffs disagree with the court's conclusion regarding reasonable necessity, they have not shown that the court applied the wrong standard in evaluating their claim.

The trial court's analysis was consistent with requirements needed to establish an easement by implication, which we described in greater detail in Taylor:

> An implied easement may be created by grant or reservation. . . . The determinative question is not what estates [the grantor] could have carved out of the property of which it was the sole owner, or how it could have made one estate dominant and the other servient, but what kind of an estate it did in fact create and what rights the plaintiff has under his deed.
>
> There can be no reservation of an easement by implication unless the easement is one of strict necessity but it has been held that in the case of an implied easement by grant a reasonable necessity suffices.  The rule is that everything apparent and continuous that is essential to the beneficial use and enjoyment of the property

---

[*]  We note that in their complaint, plaintiffs asserted that an implied easement arose in 1979 when Mrs. Raitanen conveyed the Scott parcel to the Smiths, incorrectly asserting that Mrs. Raitanen retained ownership of the 70-acre parcel at that time and that there was no other way to access the 70-acre parcel.  They thus appear to have argued in their complaint that the implied easement arose by reservation, not grant.

designated in the grant is, in the absence of language indicating a different intention on the part of the grantor, to be considered as passing by the grant as far as the grantor had power to grant it. . . . .

Necessity alone, however, does not create the easement, but is a circumstance to which resort is had to determine the real intention of the parties and raise the implication of a grant. But implied easements, whether by grant or by reservation, do not arise out of necessity alone. Their origin must be found in a presumed intention of the parties, to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable, and furthermore it is the necessity at the time of the conveyance, and as things then were, without alteration, that is to govern. The existence of an easement by implication depends upon the circumstances shown by the evidence as they were at the time of the grant.

While an easement may be implied more easily in favor of the grantee in the deed than in favor of the grantor, the question . . . [is] one of fact for the trial court to decide, and we must construe the findings of fact so as to support the decree if it can reasonably be done.

114 Vt. at 36-37 (citations omitted) (emphasis added).

In the instant case, the trial court similarly looked to the circumstances existing at the time that Mrs. Raitanen conveyed the 70-acre parcel to the Higginses while retaining the Scott parcel for herself. It found that it was not "reasonably necessary" for the Higginses to have access to the 70-acre parcel over the Scott parcel; at the time of the conveyance, the Higginses had other access to this property. Mr. Higgins testified to this effect. He further stated that he would have purchased the lot even if he could not have crossed over the Luce/Scott property. He purchased the property, which was adjacent to other property he owned, to use primarily for recreation and hunting. He characterized the Luce/Scott path as an "added luxury" and used this route sporadically to remove logs from the 70-acre lot. He testified that he logged some of the land to raise funds to pay Mrs. Raitanen, his aunt, for the 70-acre parcel. The trial court here, as factfinder, concluded that an easement across the Scott parcel to Flamstead Road was not reasonably necessary for the full enjoyment of the parcel conveyed. This conclusion is supported by the court's findings and the evidence. While plaintiffs urge us to view the evidence differently, we do not reweigh the evidence on appeal. Given that plaintiffs fail to satisfy a key element of their claim, we need not consider if they also failed to satisfy the third element of an easement by implication.

C. Easement by Necessity

Plaintiffs next assert that the court erred in evaluating whether they satisfied the requirements for an easement by necessity. Citing Berge, they argue that the Luce/Scott route is

6

the only "reasonably consistent, practical means of reaching [their] property." 2006 VT 116, ¶ 10 (emphasis omitted). They argue that the other available access points are not practical and cite evidence that they believe supports their position.

Plaintiffs essentially take issue with the trial court's assessment of the weight of the evidence. As reflected above, we view the evidence in the light most favorable to the prevailing party and defer to the trial court's assessment of the weight of the evidence. See Lofts Essex, LLC, 2019 VT 82, ¶ 17. Plaintiffs fail to show that the trial court erred in rejecting this claim.

In Berge, we considered whether the plaintiff possessed an easement by necessity over land owned by the state given that he could access his property by boat. In considering this argument, we recognized the longstanding common law rule "that when, as a result of the division and sale of commonly owned land, one parcel is left entirely without access to a public road, the grantee of the landlocked parcel is entitled to a way of necessity over the remaining lands of the common grantor or his successors in title." 2006 VT 116, ¶ 6 (quotation omitted). We identified "the basic requirements for an easement by necessity as: "(1) there was a division of commonly owned land, and (2) the division resulted in creating a landlocked parcel" with "[t]he easement . . . said to remain in effect so long as the necessity exists." Id. (quotation omitted). We found that our prior cases distinguished between "mere inconvenience and necessity, with a lack of reasonably practical access required to find an easement by necessity." Id. ¶ 10; see also Dee v. King, 73 Vt. 375, 378 (1901) (stating that " 'a way of necessity never exists where a man can get to his own property through his own land, however inconvenient the way through his own land may be' " (quoting Hyde v. Jamaica, 27 Vt. 449, 460 (1855)), and stating "[i]t is clear that mere inconvenience, however great, will not be sufficient" as "[i]t is necessity, and not convenience, that gives the right").

Applying this standard to the facts in Berge, we concluded that "without [the] use of the road across State land, [the] plaintiff would have no reasonably consistent, practical means of reaching his property." Instead, he would "be subject to the constant vicissitudes of motor boats, weather, and water conditions" and "have virtually no access for those periods of the year when the pond could not be safely traversed because of ice or snow." Id. We emphasized that this type of easement was "based on social considerations encouraging land use" and thus "its scope ought to be sufficient for the dominant owner to have the reasonable enjoyment of his land for all lawful purposes." Id. ¶ 11 (quotation omitted). We reasoned that, "without use of the road, [the] plaintiff would lack any practical means of access for the 'reasonable enjoyment of his land," finding that limited access by water did not suffice. Id. ¶ 12 (noting that "[w]e depend on roads and automobiles for transporting not only our family and friends, but all our basic necessities to and from our homes, and it is a quaint but ultimately pointless fiction to pretend that water— much less ice—represents a sufficient substitute" (footnote omitted)). We recognized that, while water access may have been sufficient at one time, "[w]e should not freeze the common law in time," and "[t]oday's standards compel the conclusion that access to navigable water is generally not legally sufficient, standing alone, to defeat a finding of necessity." Id. ¶ 18.

As the trial court recognized in the instant case, we are faced with much different circumstances here. At the time that Mrs. Raitanen conveyed the 70-acre parcel to the Higginses, they had access to it from his adjoining property, which had frontage on a public road. Plaintiffs too have other access to the 70-acre lot via their adjoining land that fronts a public road. The trial court found that this access was reasonable, practical, and feasible. While

7

plaintiffs disagree with the court's findings to this effect, they fail to show that the findings are clearly erroneous. The findings support the court's conclusion that plaintiffs failed to establish an easement by necessity.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

Karen R. Carroll, Associate Justice

8